548 F.2d 1131
 94 L.R.R.M. (BNA) 2358, 80 Lab.Cas. P 11,945,
2 Media L. Rep. 2189
 DEERING MILLIKEN, INC., Appellant,
v.
John S. IRVING, General Counsel, National Labor Relations
Board, Appellee.
DEERING MILLIKEN, INC., Appellee,
v.
John S. IRVING, General Counsel, National Labor Relations
Board, Appellant.
 Nos. 76-1221, 76-1222.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 8, 1976.
Decided Jan. 25, 1977.
 
 Robert O. King, Greenville, S. C. (Robert T. Thompson, Thompson, Ogletree & Deakins, Greenville, S. C., on brief), for appellant in 76-1221 and for appellee in 76-1222.
 Elinor Hadley Stillman, Atty., N. L. R. B., Washington, D. C. (John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., William Wachter, Acting Asst. Gen. Counsel, for Sp. Litigation, N. L. R. B., Washington, D. C., on brief), for appellee in 76-1221 and for appellant in 76-1222.
 Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.
 BUTZNER, Circuit Judge:
 
 
 1
 This appeal involves a dispute between Deering Milliken, Inc., and the General Counsel of the National Labor Relations Board over the district court's ruling that certain documents are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552. Deering Milliken appeals the court's decision exempting 56 of these documents and contends that all documents in issue should be disclosed. Conversely, the General Counsel contends that the district court erred in allowing disclosure of any documents. We affirm the district court's opinion in part, reverse in part, and remand for reconsideration.
 
 
 2
 This action is related to NLRB proceedings in which Deering Milliken was found to have violated the National Labor Relations Act.[1] The only remaining issue is the amount of back pay and other losses due approximately 540 wrongfully discharged employees. When it became clear that the amount of back pay was in dispute and that a formal hearing was necessary, the General Counsel issued a back pay specification and notice of hearing, pursuant to 29 C.F.R. § 102.52, which alleged the amount due to each claimant.[2]
 
 
 3
 After the company unsuccessfully attempted to obtain information related to the assembly of the back pay specification through administrative channels and by subpoena,[3] it requested the following documents pursuant to the Freedom of Information Act:
 
 
 4
 1. All documents containing information relating to the interim earnings of the individual backpay claimants including, but not necessarily limited to, tax records, payroll records, affidavits, statements, memoranda or notes.
 
 
 5
 2. All documents containing information concerning the search for substantially equivalent or interim employment by the individual backpay claimants including, but not necessarily limited to, affidavits, statements, memoranda or notes.
 
 
 6
 3. All documents, receipts, statements, memoranda or notes relating to travel, moving, medical or other expenses alleged in the Backpay Specification.
 
 
 7
 4. All affidavits, statements, memoranda or notes relating to the decisions by individual backpay claimants not to accept reinstatement.
 
 
 8
 5. The report, "The Darlington Case, The Economics of a Mill Closing" by Professors Robert Thornton and Urban Ozanne including any subsequent reports and supporting evidence not submitted by the employers.
 
 
 9
 Upon refusal of the General Counsel to supply this information, Deering Milliken filed a complaint under § 552(a)(4)(B) of the Act.[4] Because of the large number of documents involved, the district court directed the General Counsel to provide a descriptive list of the representative documents contained in several claimants' files, as well as a sampling of documents deemed supporting evidence for the two experts' reports. The General Counsel also submitted copies of the documents described on the list for in camera inspection. Upon examination, the court ruled that 56 of the 62 documents were exempt from disclosure by the terms of the Act. This appeal followed.
 
 
 10
 We preface our discussion of the issues by the following observations. The Freedom of Information Act establishes a general policy of full agency disclosure unless the information requested is clearly exempt under the statute. Department of the Air Force v. Rose, 425 U.S. 352, 360-61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Its purpose is to inform the public about the actions of government agencies. It was not designed to supplement the rules of civil discovery, and Deering Milliken's right to obtain information is neither enhanced nor diminished because of its needs as a litigant. Its access to agency documents must be determined by the public's right to obtain them. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).
 
 
 11
 * Title 5 U.S.C. § 552(b)(7)(A) exempts from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . interfere with enforcement proceedings."
 
 
 12
 After examining the proffered documents in camera, the district court held:
 
 
 13
 (T)here has not been and could not be any showing that production of any of these documents would harm or otherwise interfere with the NLRB-DMI back pay proceeding within the meaning of Exemption (7)(A). . . . Indeed, it appears that their production could have only a beneficial effect on the proper resolution of the back pay determination.
 
 
 14
 The legislative history of the 1974 Amendments indicates that for a document to fall within exemption 7A, the government must show that specific harm might result to its case from disclosure.[5] To satisfy this burden, the General Counsel contends that disclosure will result in earlier and enlarged access to the government's case. He relies on Wellman Industries, Inc. v. NLRB, 490 F.2d 427 (4th Cir. 1974) and the numerous other cases which hold that the Act cannot be utilized to compel premature disclosure of the government's evidence in NLRB enforcement proceedings. See, e. g., New England Medical Center Hospital v. NLRB, 548 F.2d 377 (1st Cir. 1976); Harvey's Wagon Wheel, Inc. v. NLRB, 550 F.2d 1139 (9th Cir. 1976); Roger J. Au & Son, Inc. v. NLRB, 538 F.2d 80 (3d Cir. 1976); Goodfriend Western Corp. v. Fuchs, 535 F.2d 145 (1st Cir. 1976); Title Guarantee Co. v. NLRB, 534 F.2d 484 (2d Cir. 1976). In these cases, the courts dismissed suits brought under the Act seeking disclosure of statements given by witnesses to the Board's investigators in the course of enforcement proceedings involving unfair labor practices and representation elections.[6] As grounds for applying the exemption, the courts noted that Board enforcement proceedings might be harmed by the possibility of employer coercion, the likelihood that employees would be inhibited from giving frank statements to the Board's investigators, and the opportunity for a suspect to falsify a defense.
 
 
 15
 No such potential harm exists with respect to back pay proceedings. Employees are not ordinarily susceptible to employer pressure in a back pay proceeding. The underlying unfair labor practice controversy has already been resolved, and all that remains is the largely objective task of ascertaining the amount of back pay that is due. For the same reason, it is not likely that an employer can fabricate a defense. Recognizing the distinction between an unfair labor practice hearing and a back pay proceeding, we have held that an employer is entitled to fuller discovery in a back pay proceeding. Florence Printing Co. v. NLRB, 376 F.2d 216, 223 (4th Cir. 1967); but cf. J. H. Rutter Rex Mfg. Co., Inc. v. NLRB, 473 F.2d 223 (5th Cir. 1973). While Florence Printing dealt with discovery of interim earnings, it suggests no reason for restricting discovery to that issue only; other evidence pertaining to mitigation of damages should stand on the same footing. The reason for denying disclosure on the ground that it will interfere with the government's case no longer exists. Therefore, exemption 7A is inapplicable.
 
 
 16
 Parenthetically, we note that the conclusion we reach fully accords with the recommendation of the Chairman's Task Force on the National Labor Relations Board which recently reported: "In back-pay cases, full disclosure should be available concerning information which would tend to verify, contradict, or further clarify the material in the files of the General Counsel." 93 LRR 221, 247 (Nov. 5, 1976).
 
 
 17
 So there may be no misunderstanding about the scope of this opinion, we reiterate that our denial of a 7A exemption is limited to back pay proceedings. We do not depart from the sound precedent, including our own, which exempts from disclosure investigatory records compiled for representation and unfair labor practice proceedings.
 
 II
 
 18
 The district court sustained the General Counsel's claim that 43 of the 62 documents submitted for in camera review are ex- empt from disclosure under 5 U.S.C. § 552(b)(7)(C). This subsection exempts investigatory records compiled for law enforcement purposes "to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy." The exempted documents contained information about individual claimants. Relying on Robles v. EPA, 484 F.2d 843 (4th Cir. 1973), the court declined to balance or compare the claimants' interest in privacy with the public interest in disclosure and denied Deering Milliken's request for disclosure.
 
 
 19
 After the district court's opinion was released, the Supreme Court ruled that when privacy is asserted as a reason for exemption, Congress intended the courts to balance the private and public interests. Department of the Air Force v. Rose, 425 U.S. 352, 372-73, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Measured by this test, it is apparent that most of the information about individual claimants is not exempt from disclosure.[7]
 
 
 20
 In Rose, 425 U.S. at 367-69, 96 S.Ct. 1592, the Court recognized the public's concern about the administration of the Air Force Academy. While it is unlikely that the Deering Milliken controversy has generated similar widespread interest, it is of considerable concern to many persons who specialize in the study or practice of labor law. Over the past 20 years, commentators have written more than 30 law review articles and notes about various aspects of this case. Indeed, the case serves as an indicator of the effectiveness of the Labor Act and the efficiency of Board procedures. It also illustrates the responses of both management and labor to the requirements of the law.
 
 
 21
 Balanced against the public interest, the privacy interests of the claimants are minimal. Many of the facts in the requested documents have already been made public as a part of the back pay specification, and other facts will be admitted into evidence as the back pay hearing progresses. Thus, information that verifies, contradicts, or explains the back pay specification is, or will be, part of the public record. The back pay proceedings will ultimately lay bare the facts. Disclosure of this same information is not an unwarranted invasion of the claimants' privacy simply because it occurs before the hearing.
 
 
 22
 There may be information in a claimant's file revealing intimate details of a personal nature, bearing only slight relevance to the inquiry about back pay. The claimants' privacy interest is considerably greater with respect to such information. This information may be withheld upon the General Counsel's specific identification and request in accordance with 5 U.S.C. § 552(a)(4) (B). Cf. Department of the Air Force v. Rose, 425 U.S. 352, 375, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).
 
 III
 
 23
 The Act exempts investigatory files complied for law enforcement purposes that would "disclose the identity of a confidential source . . ." 5 U.S.C. § 552(b)(7)(D). The legislative history explains that the identity of a person furnishing information "may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."[8] The district court denied the General Counsel's claim for exemption under this subsection.
 
 
 24
 Whether the proof shows an express or implied assurance of confidentiality is ordinarily a question of fact. In this case, it is readily apparent that the district court's finding of an absence of such assurances is supported by the record. We, therefore, affirm its denial of the exemption.
 
 IV
 
 25
 The General Counsel also invokes 5 U.S.C. § 552(b)(5) which exempts from disclosure "intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." Deering Milliken contends that exemption 5 does not bar disclosure of any of the documents it seeks. The district court ruled that the factual material the General Counsel had gathered could not be withheld. However, since it exempted nearly all documents from disclosure under the privacy clause of § 552(b)(7)(C), it did not identify the material covered by exemption 5, other than the experts' reports which it held were exempt.
 
 
 26
 The Supreme Court has construed exemption 5 as permitting an agency to withhold documents which are privileged and, therefore, normally not available in pre-trial discovery to a person engaged in litigation with the agency. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-55, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). In stating this rule, the Court noted that the particular needs of a specific litigant do not affect the agency's obligation to disclose. Consequently, only those memoranda which would not "routinely be disclosed" in private litigation are exempt. Sears, 421 U.S. at 149 n.16, 95 S.Ct. 1504; H.R.Rep.No.1497 at 10, reprinted in Senate Judiciary Committee, 93d Cong.2d Sess., Freedom of Information Act, at 22.
 
 
 27
 The General Counsel claims that the requested documents would not be discoverable, and thus are exempt from disclosure under § 552(b)(5) on the following grounds: (a) attorney's work-product privilege, (b) executive privilege, and (c) the limitations upon discovery of experts' reports.
 
 
 28
 Without defining the "outer boundaries of the attorney's work-product rule," the Court observed that exemption 5 "clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." Sears, 421 U.S. at 154, 95 S.Ct. at 1518. Without doubt, it also applies to the "mental impressions, conclusions, opinions, or legal theories" of the General Counsel's attorneys and other representatives. See Federal Rule of Civil Procedure 26(b)(3).
 
 
 29
 The Court has set forth the parameters of executive privilege under exemption 5 more completely than those of the work-product privilege. In EPA v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the Court held that the doctrine of executive privilege entitles an agency to withhold from disclosure "intra-agency advisory opinions," and other information reflecting "deliberative or policy making processes." 410 U.S. at 86-89, 93 S.Ct. 827. The Court, however, observed that the executive privilege has "finite limits, even in civil litigation." Accordingly, it held that "in the absence of a claim that disclosure would jeopardize state secrets, . . . memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government." 410 U.S. at 87-88, 93 S.Ct. at 836.
 
 
 30
 The General Counsel argues that the work-product privilege is not limited by the factual-deliberative distinction set forth in Mink; instead, this privilege embraces all factual material assembled for trial by a litigant's attorney or other representative.
 
 
 31
 We cannot accept the General Counsel's interpretation of exemption 5. To allow such a broad exemption under the work-product rule would frequently swallow the distinction between factual and deliberative matters so carefully delineated by the Court in Mink. The General Counsel's argument would lead to the anomalous result of withholding factual material despite the Supreme Court's recognition that the same material would not be withheld under executive privilege because it "would generally be available for discovery by private parties in litigation with the Government." Mink, 410 U.S. at 88, 93 S.Ct. at 836. Therefore, we view the factual-deliberative distinction emphasized in Mink relevant to a consideration of the work-product privilege.[9]
 
 
 32
 The district court found that in most instances the factual material could be readily severed from the privileged material. Therefore, if the parties cannot reach agreement, the district court should make an in camera inspection of the documents to identify the factual information that must be disclosed. It should take care not to compromise the privileged information consisting of the "mental impressions, conclusions, opinions, or legal theories" of the General Counsel's attorneys, or the "deliberative or policy making processes" of the agency. Rule 26(b)(3); EPA v. Mink, 410 U.S. 73, 89, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Ethyl Corp. v. EPA, 478 F.2d 47, 52 (4th Cir. 1973). It should withhold the General Counsel's staff's appraisal of the evidence but not the facts contained in witnesses' statements or other purely factual material. Cf. Kent Corp. v. NLRB, 530 F.2d 612, 624 (5th Cir. 1976); Montrose Chemical Corp. v. Train, 160 U.S.App.D.C. 270, 491 F.2d 63, 68 (1974).
 
 
 33
 We agree with the district court that a civil litigant normally would not be able to compel production of the experts' reports under Federal Rule 26(b)(4), and, therefore, these documents do not have to be disclosed in this action. Moreover, the parties' stipulations about access to the experts' proposed testimony eliminate the need for disclosure of information about the reports which a litigant routinely could obtain under Rule 26(b)(4).
 
 
 34
 The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Deering Milliken, having substantially prevailed, shall recover its costs and a reasonable attorney's fee. 5 U.S.C. § 552(a)(4)(E).
 
 
 
 [1]
 The history of this litigation is summarized in Darlington Mfg. Co. v. NLRB, 397 F.2d 760 (4th Cir. 1968)
 
 
 [2]
 Title 29 C.F.R. § 102.53(a) sets out the contents of a back pay specification:
 Where the specification procedure is used, the specification shall specifically and in detail show, for each employee, the back-pay periods broken down by calendar quarters, and specific figures and basis of computation as to gross back pay and interim earnings, the expenses for each quarter, the net back pay due, and any other pertinent information.
 
 
 [3]
 Generally speaking, the only discovery available to a party under the Board's rules is the production of a witness' statement after the witness has given direct testimony. 29 C.F.R. § 102.118(a); see Title Guarantee Co. v. NLRB, 534 F.2d 484, 487 (2d Cir. 1976)
 
 
 [4]
 Section 552(a)(4)(B) provides:
 On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.
 
 
 [5]
 See Senator Hart's statement in Senate Debate, 120 Cong.Rec. 17033 (1974), reprinted in Joint Committee Print, 94th Cong. 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93-502) at 333
 
 
 [6]
 Courts differ as to whether a per se exemption should be given to non-employee statements. Compare Harvey's Wagon Wheel, Inc. v. NLRB, 550 F.2d 1139 (9th Cir. 1976) (no per se exemption) with New England Medical Center Hospital v. NLRB, 548 F.2d 377 (1st Cir. 1976) (per se exemption)
 
 
 [7]
 Rose construed exemption 6 and not 7C. Although the difference in the text of the subsections suggests that greater weight should be given to the claim of privacy when exemption 7C is invoked, the Court's balancing test is appropriate here
 
 
 [8]
 House of Representatives, 93d Cong.2d Sess., Conference Report No. 93-1380, Freedom of Information Act Amendments, reprinted in Joint Committee Print, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93-502) at 230
 
 
 [9]
 Factual material in witnesses' statements may be withheld under exemption 5 when disclosure will hamper the "deliberative processes" of government by making it difficult for the government to obtain essential information. See, e. g., Brockway v. Dept. of the Air Force, 518 F.2d 1184, 1194 (8th Cir. 1975); Cf. Machin v. Zuckert, 114 U.S.App.D.C. 335, 316 F.2d 336 (1963). This, however, is not the situation here