**Margo POSS, Plaintiff-Appellee,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant-Appellant.**

**No. 76–1328.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 5, 1977.

Decided Nov. 14, 1977.

Sander N. Karp, Denver, Colo. (Jeffrey A. Goldstein, Karp & Goldstein, Denver, Colo., on the brief), for plaintiff-appellee.

John G. Elligers, Atty., N. L. R. B., Washington, D. C. (William Wachter, Acting Asst. Gen. Counsel for Sp. Litigation, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for defendant-appellant.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case involves the Freedom of Information Act and concerns an investigatory record of the N.L.R.B. On cross motions for summary judgment the trial court ordered the N.L.R.B. "to disclose [to the plaintiff] the factual information contained in the affidavits and notes of interviews found in the file in N.L.R.B. case number 27–CA–4294, Electron Corporation." The N.L.R.B. seeks reversal of the judgment and order of the trial court. We affirm.

The underlying facts are not in dispute, and both the plaintiff, Poss, and the defendant, the N.L.R.B., in their respective motions for summary judgment asserted that each was entitled to a favorable judgment as a matter of law.

Margie Poss filed an unfair labor practice charge with the N.L.R.B., alleging that her employer, Electron Corporation, had terminated her employment in retaliation for her union activities. After inquiry and investigation, the regional director for the N.L.R.B. informed Poss that there would be no issuance of a complaint against her employer. The reason for this refusal was because the investigation conducted by the N.L.R.B. indicated that Poss' employment was terminated for taking unauthorized breaks, after warning, not because of any union activity on her part. Poss then appealed the regional director's decision to the Board's general counsel in Washington, D. C. In her appeal she incorporated a request that she be given access to the factual information contained in the Board's investigatory file relating to her charge. The appeal was later denied and the regional director's decision not to issue a complaint against the employer was affirmed. Subsequently the Board, acting through its Freedom of Information Offi-

cer, denied Poss' request for the factual information contained in the Board's investigative file. This denial was based on a belief that the material sought by Poss was exempt under 5 U.S.C. § 552(b)(7)(A), (C), and (D). The Board's general counsel later denied Poss' appeal from this order of the Board's Freedom of Information Office.

Pursuant to 5 U.S.C. § 552(a)(4)(B), Poss then instituted the present proceeding to compel the Board to release the requested information. In the trial court, in addition to defending on the basis of the exemptions found in 5 U.S.C. § 552(b)(7)(A), (C) and (D), the Board asserted that the material sought was also exempt under 5 U.S.C. § 552(b)(5). The trial court concluded that none of the exemptions relied on by the Board was applicable and granted Poss' motion for summary judgment. The trial court then ordered the Board to disclose the "factual information" contained in the affidavits and notes of interviews contained in the Board's investigative file. This appeal followed.

■ The dominant legislative intent in the Freedom of Information Act is directed towards disclosure, not secrecy, and the limited statutory exemptions are to be narrowly construed. *Department of the Air Force v. Rose*, 425 U.S. 352, 366, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). And the burden is on the administrative agency to prove that the documents sought are within the statutory exemptions from disclosure. 5 U.S.C. § 552(a)(4)(B). *Campbell v. United States Civil Service Commission*, 539 F.2d 58, 61 (10th Cir. 1976).

As previously indicated, the Board contends that the material sought by Poss is exempt under any one of four exemptions set forth in the Act. The first exemption relied on by the Board, 5 U.S.C. § 552(b)(5), provides as follows:

(b) This section does not apply to matters that are—

\*　　\*　　\*　　\*　　\*　　\*

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

The remaining three exemptions relied on by the Board are contained in 5 U.S.C. § 552(b)(7)(A), (C) and (D), which reads as follows:

(b) This section does not apply to matters that are—

\*　　\*　　\*　　\*　　\*　　\*

(7) Investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source . . . .

A discussion of each of these exemptions follows.

### Exemption (7)(A)

Exemption (7) in the original Act exempted "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." Thus the original exemption (7) made no distinction between investigations and enforcement proceedings which were open and on-going in nature, and investigations and enforcement proceedings which had run their course and were closed. And the original exemption (7) made no reference to an investigation which culminated in an administrative agency's determination that there should *not* be any enforcement proceedings. The only test was whether the investigative file was compiled for law enforcement purposes, subject to the stated exception, which is not here pertinent.

In view of the language of original exemption (7), it is not particularly surprising that several courts held that the original exemption (7) applied to "closed" enforcement proceedings, as well as to enforcement proceedings which were pending and on-going in nature. So, for example, in *Frankel v. Securities and Exchange Commission*, 460 F.2d 813 (2d Cir. 1972), the Second Circuit held that original exemption (7) applied to investigations for law enforcement pur-

poses which had been concluded, as well as to investigations for law enforcement purposes in which enforcement proceedings were pending or in the offing. As concerns investigations and enforcement proceedings which were open and pending, the Second Circuit stated that the purpose of exemption (7) was to prevent the premature disclosure of the results of an investigation so that the Government could present its "strongest case in court." As concerns investigations and enforcement proceedings which had been concluded and were at an end, the Second Circuit, in holding that exemption 7 still applied, stated that the purpose for such was to keep confidential the agency's investigative techniques and procedures, the revelation of which might hinder future law enforcement efforts.

In 1973 and 1974 the Circuit Court for the District of Columbia held in four cases that whenever documents were shown to be a part of an investigatory file compiled for law enforcement purposes, such were, under the terms of exemption 7, exempt from disclosure, and that, based on the wording of the statute, the matter was "at an end." *See Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S.App.D.C. 368, 502 F.2d 370 (1974); *Ditlow v. Brinegar,* 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974), *cert. denied,* 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *Aspin v. Department of Defense,* 160 U.S.App.D.C. 231, 491 F.2d 24 (1973); and *Weisberg v. U. S. Department of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).

■ Presumably in response to the above cited decisions, Congress in 1974 rewrote the original exemption (7). By such amendment, investigatory files compiled for law enforcement purposes continued to be exempt, but if, and only if, the production of such records would "(A) interfere with enforcement proceedings . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source." The purpose behind the 1974 amendment was to expand disclosure

and to limit exemptions to "specific instances of harm to governmental or individual interests." *Climax Molybdenum Co. v. N. L. R. B.,* 539 F.2d 63, 64 (10th Cir. 1976).

■ Exemption (7)(A) exempts investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would interfere with enforcement proceedings. Otherwise, such records are within the reach of the Act. In the instant case the Board refused to issue a complaint against Poss' employer, and it is agreed that a determination by the Board *not* to file an unfair labor practice complaint is final and not reviewable. *N. L. R. B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 155, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) and *Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966). Accordingly, there are *no* enforcement proceedings pending, none is contemplated, and a literal reading of exemption (7)(A) would indicate that particular exemption has no applicability to the present case. To produce the files here asked for by Poss certainly would not result in any "premature disclosure" and thereby prevent the N.L.R.B. from presenting its "strongest case in court." There isn't going to be *any* "case in court." See in this regard, *N. L. R. B. v. Sears, Roebuck & Co.,* 421 U.S. 132, footnote 28 at p. 163, 95 S.Ct. 1504 at p. 1522 (1975) where it is stated that the purpose of preventing premature disclosure "is plainly inapplicable to cases in which the General Counsel [of NLRB] has declined to commence a case."

In the instant case the Board notes that exemption (7)(A) refers to interfering with "enforcement proceedings" and emphasizes that "enforcement proceedings" is in the plural, and not the singular. Hence, argues the Board, it should not be required to produce files in a "closed" case, because such would reveal its investigatory techniques and interfere with future investigations and enforcement proceedings. This particular argument is in line with the "second purpose" mentioned in *Frankel v. Securities & Exchange Commission,* 460 F.2d 813 (2d Cir. 1972). Assuming that exemption (7)(A) still includes the "second

purpose" referred to in *Frankel*,* the Board in the instant case has failed to show how the production of the files sought by Poss would reveal the Board's investigative techniques and procedures and thereby hinder future investigation. So far as the record before us is concerned, this is simply an instance where the Board sent an investigator, or investigators into the field. Presumably they interviewed Poss' fellow employees and supervisors concerning the reasons why Poss was fired from her job, and the surrounding facts and circumstances leading thereto. From certain of the persons thus contacted, affidavits were taken. In other instances, the investigator simply made notes of what was told him by the person interviewed. In our view, to now produce such affidavits and notes would not reveal any investigative techniques, the revelation of which would in anywise hamper future investigations. Interviewing, and making notes of what was said, or obtaining an affidavit from the one interviewed, is a common investigative technique and involves nothing unique or novel. We simply fail to see how producing the files here ordered by the trial court would reveal investigatory procedures which would play havoc with future Board investigations. At least the Board has not demonstrated that such would be the result, and the burden of showing such is on the Board.

### Exemptions (7)(C) and (D)

Much of the foregoing has applicability to exemptions (7)(C) and (D), which provide, in essence, that investigatory records compiled for law enforcement purposes are exempt if, and only if, the production of such would constitute an unwarranted invasion of personal privacy or disclose the identity of a confidential source. Otherwise, insofar as these two exemptions are concerned, the records are within the reach of the Act.

■ A reading of exemptions (7)(C) and (D) convinces us, as it did the trial court, that neither has applicability to the present case. The trial court's order merely required the Board to disclose the "factual information" contained in certain affidavits and notes of interviews contained in the investigatory file made in connection with Poss' charge that she was fired from her job for union activities. In a memorandum submitted to the trial court the Board said that the persons interviewed or from whom affidavits were taken were assured that the *information* furnished would remain confidential unless they were called upon to give testimony upon formal hearing. In this regard, we agree with the trial court that in the giving of such assurance the people interviewed were not given a guarantee of "total anonymity." Indeed, all concerned must have understood, and they were apparently even advised by the Board of this, that if a complaint were in fact filed, then many of those interviewed would be called up to actually testify at an ensuing hearing on the matter. Thus, at the time of the giving of the affidavit and at the time of the interview there was no guarantee of absolute confidentiality. And the fact that in the instant case no complaint was later filed, and no hearing will ever be held, should not operate so as to insure "total anonymity."

Exemption 7(C) refers to an invasion of personal privacy and (7)(D) exempts production of files which would identify "confidential sources." Neither a follow employee of Poss nor any of her supervisors is, in our view, a "confidential source," at least not in the traditional sense of that term. And we fail to see how production of files in accord with the trial court's order would be an unwarranted invasion of the "personal privacy" of Poss' fellow employees or supervisors. Presumably they were simply relating what they knew concerning Poss' employment termination. The subject matter itself looks away from confidentiality and any invasion of privacy. Therefore, on the record, the Board has failed to sustain its burden of showing that either of these exemptions has present applicability.

* Such matter would appear to be more properly included in exemption (7)(E), which exempts matter which would "disclose investigative techniques and procedures."

Exemption (5)

This exemption concerns inter-agency or intra-agency memorandum or letters. Such is clearly inapplicable to the present case. We are here concerned with notes taken by a Board investigator during an interview, and, in certain instances, affidavits given by the person interviewed. Such do not constitute inter-agency or intra-agencies memorandum or letters. Nor would such notes or affidavits be deemed as the work product of an attorney. See, for example, *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, at pp. 154, 155, 95 S.Ct. 1504, for a discussion of this matter.

Judgment affirmed.