Robert W. KILROY, et al., Plaintiffs,

v.

NATIONAL LABOR RELATIONS BOARD, et al., Defendants.

Civ. No. C–1–84–01.

United States District Court, S.D. Ohio, W.D.

Dec. 16, 1985.

David W. Miller, Indianapolis, Ind., Barbara Scott Bison, Cincinnati, Ohio, for plaintiffs.

Aileen Armstrong, Washington, D.C., Emil Farkas, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court for disposition on cross-motions for summary judgment. The parties have agreed that there are no factual disputes and that the matter may be decided on such motions submitted.

### I. *Findings of Fact*

1. On November 7, 1983, Robert W. Kilroy, plaintiff and legal counsel for co-plaintiff, American Commercial Barge Line Company (Commercial Barge), requested information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982), from the National Labor Relations Board (NLRB or Board) in 58 cases. He requested charging party statements or affidavits, letters of dismissal in the absence of a withdrawal, and any memoranda from the Division of Advice of the General Counsel's office. The requests stated that Kilroy intended to use the documents in connection with specific legislation proposed to Congress that would remedy asserted Board inconsistency in "hiring hall" cases.[1] On November 8, 1983, Kilroy asked the Board for all statements and affidavits of the charging party in an additional case. No reason was given for this request. (Doc. No. 1, Ex. 6)

2. The Board responded to both requests by disclosing the "formal" documents in its files, but withholding the "evidentiary material." The Board's Regional Director based his decision on the General Counsel's policy prohibiting disclo-

sure of evidentiary material for six months following the closing of a case. The stated basis for that policy was Exemption 7(A) of the FOIA. (Doc. No. 1, Exs. 3, 7) Kilroy appealed the Director's decision to the General Counsel who affirmed the decision. The General Counsel also added Exemptions 7(C) and 7(D) as justifications for his policy. (Doc. No. 1, Exs. 5, 9) Having exhausted their administrative remedies, plaintiffs brought this suit under the FOIA for disclosure of the withheld material. 5 U.S.C. § 552(a)(4)(B) (1982).

3. The information withheld consists of 46 affidavits of employees supporting their unfair labor practice charges against their union or employer, three letters written by Board personnel in confirmation of telephone conversations they had with employees regarding their unfair labor practice charges (Vaughn Index Nos. 14, 41, 42), one affidavit of a union official supporting the union's unfair labor charge concerning employees' discharges, (Vaughn Index No. 44) and two position statements by union attorneys in support of the union's unfair labor practice charge (Vaughn Index Nos. 43, 48). The 46 employee affidavits and three telephone transcriptions bear the same characteristics and will hereinafter be referred to together as charging party statements.

4. Two years have passed since Kilroy's requests for information. Despite the Board's original reliance on its six-month policy embodied in General Counsel's memorandum 79–6, 100 L.R.R. 122 (February 12, 1979), the documents remain undisclosed. The Board has now abandoned all reliance on that policy in this proceeding and relies solely on FOIA Exceptions 5, 7(A), 7(C) and 7(D) in defense of its position.[2] 5 U.S.C. §§ 552(b)(5), (7)(A), (7)(C),

---

1. A hiring hall is an employment service operated by a union. It provides an employer with a readily available pool of labor upon which an employer may draw. *See, e.g., Int'l Brotherhood of Teamsters v. NLRB,* 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961).

2. It is the Board's abandonment of its six-month policy that distinguishes this case from *American Commercial Barge Lines Company v. N.L. R.B.,* Civil No. C–1–82–537 (S.D.Ohio, July 6, 1983) [Available on WESTLAW, DCTU database], *rev'd* 758 F.2d 1109 (6th Cir.1985). In the earlier case, the Board disclosed the documents

(7)(D) (1982). This Order will accordingly be confined to a consideration of those exemptions.

## II. *Opinion*

 The basic policy of the FOIA favors disclosure. The Act should be broadly construed to further that end. *Dep't. of Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976). There are nine exemptions, however, intended to meet specific confidentiality and privacy interests. Those exemptions are to be narrowly construed, *id.* at 361, 96 S.Ct. at 1599, with a burden on the federal agency to prove their applicability. 5 U.S.C. § 552(a)(4)(B) (1982). The agency's action is subject to *de novo* review. *Id.*

### A. *Exemption 5*

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (1982). It bestows upon agencies those privileges developed in civil litigation discovery. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 1493, 79 L.Ed.2d 814 (1984); *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). The Board has invoked the work product and executive privileges.

The Board's reliance on Exemption 5 must fail for two reasons. First, the documents at issue do not qualify as "interagency or intra-agency memorandums or letters." The United States Supreme Court has expressly declined to determine what constitutes inter-agency or intra-agency memorandums or letters. 104 S.Ct. at 1492 n. 13. Several appellate courts, however, have determined that Exemption 5 applies only to internal agency documents or documents prepared by outsiders who have a formal relationship with the agency. *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 751 F.2d 982, 985 (9th Cir.1985); *County of Madison v. Dep't of Justice*, 641 F.2d 1036, 1040, 1042 (1st Cir.1981); *Ryan*

*v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir.1980). In *Van Bourg* and in *Poss v. NLRB*, 565 F.2d 654 (10th Cir.1977), the courts held in fact situations similar to the case at bar, that the contested documents did not constitute inter-agency or intra-agency memorandums or letters. *Accord, Title Guarantee Co. v. NLRB*, 534 F.2d 484, 492 n. 15 (2d Cir.1976) (district court ruling); *Mylan Pharmaceuticals, Inc. v. NLRB*, 407 F.Supp. 1124, 1126 n. 3 (W.D. Pa.1976). The documents contested at bar fall into the same pattern. They were generated by and at the initiative of parties who did not have a formal relationship with the Board. As such, the contested documents cannot qualify as inter-agency or intra-agency memorandums or letters.

 Exemption 5 protection is likewise unavailable since the documents do not qualify for any discovery privileges. The Board relies on the executive and work product privileges. The executive privilege is intended to protect the decision making process of government agencies by withholding all papers that reflect the agency's group thinking in the process of working out its policy and determining what its policy should be. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 152, 95 S.Ct. 1504, 1516, 1517, 44 L.Ed.2d 29 (1975); *Tennessean Newspapers, Inc. v. FHA*, 464 F.2d 657, 660 (6th Cir.1972).

 The critical inquiry then is "whether production of the contested document would be 'injurious to the consultative functions of government that the privilege of nondisclosure protects." *EPA v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973) (*citing Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 141 Ct.Cl. 38, 49 (1958)). Purely factual material can be withheld only if it jeopardizes state secrets, or is so intertwined with privileged material that the two cannot be severed. *Id.* at 87, 92, 93 S.Ct. at 836, 838; *Parke Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir. 1980).

at the end of the six-month buffer period and

only the issue of attorney fees remained.

The work product privilege applies to "the tangible and intangible material which reflects the attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembly of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions." *In re Grand Jury Subpoena dated November 8, 1979*, 622 F.2d 933, 935 (6th Cir.1985) (*citing Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

■ The Board's claims for the protection of both privileges are effectively foreclosed by *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The contested documents in that case were "Appeals Memoranda" and "Advice Memoranda." An appeals memorandum is a document generated by the Appeals Committee of the Board instructing a Regional Director whether to issue a complaint in a specific case. It states the decision of the General Counsel and his reasons for that decision. *Id.* at 140, 95 S.Ct. at 1511. Advice Memoranda contain basically the same content as Appeals Memoranda but are initiated and developed in a slightly different fashion. *Id.* at 141–42, 95 S.Ct. at 1511–12.

The Court in *Sears, Roebuck & Co.* ruled that Appeals and Advice Memoranda that instructed the Regional Director not to file a complaint are not exempt under Exemption 5 while those that result in a complaint are. *Id.* at 155, 95 S.Ct. at 1518. The Court concluded that disclosing the documents after a final decision of the General Counsel not to file a complaint "would not intrude on predecisional processes, and protecting them would not improve the quality of agency decisions." *Id.* Memoranda that result in complaints, however, initiate a litigation process that necessitates further decision making, and since they would have been prepared in contemplation of upcoming litigation, they would qualify as work product. *Id.* at 159–60, 95 S.Ct. at 1520–21.

The reasoning of *Sears, Roebuck & Co.* bars the application of Exemption 5 to the documents herein. Like the Advice and Appeals Memoranda generated in cases where a complaint does not issue, the documents herein are the product of closed cases. No further decision making or litigation will be engaged in by the Board. The reasons for Exemption 5 protection no longer exist. Further, the documents herein reveal much less of the deliberative processes of the Board and are much further from standard notions of work product than the memoranda in *Sears, Roebuck & Co.* The Appeals and Advice Memoranda include the Board's understanding of the facts, its decision, and reasons for the decisions. Except for the position statements which contain limited legal argument, the documents herein consist solely of factual statements and occasionally legal arguments made by parties outside the Board at those parties' initiative. If Appeals and Advice Memoranda in closed cases do not qualify for executive or work product privileges, charging party statements and position papers cannot. Several other courts have reached the same conclusion when faced with similar facts. *See Van Bourg, Allen, Weinberg & Roger v. NLRB*, 751 F.2d 982, 985 (9th Cir.1985); *Poss v. NLRB*, 565 F.2d 654 (10th Cir.1977); *Title Guarantee Co. v. NLRB*, 534 F.2d 484, 492 n. 15 (2d Cir.1976) (district court ruling); *Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724 (5th Cir.1977), *rev'd on other grounds*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Mylan Pharmaceuticals, Inc. v. NLRB*, 407 F.Supp. 1124, 1126 n. 3 (W.D. Pa.1976). *See also Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1138 (4th Cir. 1977); *Kent Corp. v. NLRB*, 530 F.2d 612 (5th Cir.1977).

The Board has cited only two cases that reach a contrary result. *Jamco International, Inc. v. NLRB*, 91 L.R.R.M. 2446 (N.D.Okla.1976); *Hook Drugs, Inc. v. NLRB*, 91 L.R.R.M. 2797 (S.D.Ind.1976). Neither case contains any analysis and refers only to *Brennan v. Engineered Products, Inc.*, 506 F.2d 299 (8th Cir.1974). *Brennen* did not address the inter-/in-

tra-agency issue nor did it involve the FOIA. The Court thus finds none of these three cases authoritative on the issue at hand.

One other case cited by the Board deserves brief comment. The United States Supreme Court in *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), held that witness statements gathered by the Air Force in a crash investigation were protected from disclosure by Exception 5. This case is not controlling for two reasons. First, *Weber Aircraft Corp.* involved statements made by Air Force personnel to Air Force personnel solely for Air Force purposes. The statements thus fit squarely within the definition of inter-agency memoranda whereas the instant documents do not. Second, the case did not involve the executive or work product privileges. The Air Force instead relied on a common law privilege first enunciated in *Machin v. Zuckert*, 316 F.2d 336 (D.C.Cir.), *cert. denied* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). This is a narrow discovery privilege aimed specifically at confidential witness statements taken during crash investigations. It is intended to protect precisely the same governmental functions as Exemption 5. 104 S.Ct. at 1494–95. The executive and work product privileges, by contrast, have broad and varied application, and their objectives do not coincide as precisely with those of Exemption 5 as does the *Machin* privilege. *Weber Aircraft Corp*, therefore, has little application to the case at hand.

Accordingly, this Court follows the reasoning of *Sears, Roebuck & Co.* and the majority of authority and holds that the contested documents herein are not protected from disclosure by Exemption 5.

B. *Exemption 7*

Exemption 7 protects from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, ... (C) constitute an unwarranted in-

vasion of personal privacy, [or] (D) disclose the identity of a confidential source...." 5 U.S.C. § 552(b)(7)(A), (C), (B) (1982). Plaintiffs do not dispute that the documents in question are investigatory records compiled for law enforcement purposes. The disagreement is over application of the specific subdivisions of the exemption.

The specific subdivisions are a product of the FOIA's 1974 amendments. Prior to that time, agencies made it a practice, which the courts upheld, to withhold all information in investigatory files compiled for law enforcement purposes. Source Book: Legislative History, Texts, and Other Documents, FOIA and Amendments of 1974, 332 (P.L. 93–502) (Joint Committee Print, March, 1985) (hereinafter cited as Source Book). This practice was contrary to the original intent of Congress that Exemption 7 act to protect the government's case in court by not allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have. *Id.* at 333 (Comments of Senator Hart). Thus, in 1974, Senator Hart introduced an amendment to Exemption 7 that would place the burden on the agency to justify nondisclosure by citing a specific interest that needed protection. *Id.* The result is the current version of Exemption 7. With that background, we turn to the specific interests claimed by the Board.

1. *Exemption 7(A)*

 A fair reading of this exemption's legislative history and case law indicates that it applies only when a law enforcement proceeding is pending. Foremost among the purposes of Exemption 7 is to prevent harm to the government's case in court. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) (*quoting* S.Rep. No. 813, 89th Cong., 1st Sess. (1965) (Source Book at 44)). This timing consideration was echoed by Senator Hart as he consistently referred to the "government's case in court," the "investigation before the proceeding," and

"prospective law enforcement proceeding." Source Book at 333.

■ The courts have been uniform in recognizing that 7(A) applies only to pending enforcement proceedings. *See, e.g., American Commercial Barge Lines Co. v. NLRB,* 758 F.2d 1109, 1113 (6th Cir.1985); *Van Bourg, Allen, Weinberg & Roger v. NLRB,* 751 F.2d 982, 985 (9th Cir.1985); *Seegull Manufacturing v. NLRB,* 741 F.2d 882, 886 (6th Cir.1984); *Poss v. NLRB,* 565 F.2d 654, 658 (10th Cir.1977). In support of its position, the Board can cite only cases in which enforcement proceedings are pending. *See NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *J.P. Stevens & Co. v. Perry,* 710 F.2d 136 (5th Cir.1983); *NLRB v. Hardeman Garment Co.,* 557 F.2d 559 (6th Cir.1977). Since the documents requested here relate to 58 closed cases, they cannot qualify for protection under Exemption 7(A).

2. *Exemption 7(C)*

This Exemption protects from disclosure those records that would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (1982). It was intended as an incorporation of Exemption 6 into Exemption 7. Source Book at 333. Exemption 6 protects "personal and medical files and similar files." 5 U.S.C. § 552(b)(6) (1982). The only difference between the two exemptions is that the unwarranted invasion under Exemption 6 must be clearly established. This Court will hold the Board to the lesser standard of Exemption 7(C) while looking to Exemption 6 cases for guidance.

■ The United States Court of Appeals for the Sixth Circuit has developed a two-prong test to determine whether disclosure of contested information would be an unwarranted invasion of personal privacy under Exemptions 6 or 7(C). The first inquiry is whether public access to the information constitutes an invasion of privacy. If so, the invasion is balanced against the countervailing public benefit derived from disclosure. *Heights Community Congress*

*v. Veterans Administration,* 732 F.2d 526, 529 (6th Cir.1984); *Kiraly v. FBI,* 728 F.2d 273, 277 (6th Cir.1984); *Madeira Nursing Center, Inc. v. NLRB,* 615 F.2d 728 (6th Cir.1980).

■ An invasion of privacy occurs when disclosure would subject a person to embarrassment, harassment, physical danger, disgrace, or loss of employment or friends. 728 F.2d at 277; *Dep't. of Air Force v. Rose,* 425 U.S. 352, 377, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11 (1976). Thus, courts have found that disclosure of the following may constitute invasions of personal privacy: union authorization cards, *Madeira Nursing Center, Inc. v. NLRB,* 615 F.2d 728, 730 (6th Cir.1980); files of criminal victims and witnesses, *Kiraly v. FBI,* 728 F.2d 273 (6th Cir.1984); *Brown v. FBI,* 658 F.2d 71 (2d Cir.1981); FBI agents' names, *Miller v. Bell,* 661 F.2d 623 (7th Cir.1981); home loan application files, *Heights Community Congress v. Veterans Administration,* 732 F.2d 526 (6th Cir. 1984). On the question of whether disclosure of witness statements would constitute an invasion of privacy, the courts are split with a majority favoring disclosure. *Poss v. NLRB,* 565 F.2d 654 (10th Cir.1977) (no privacy interest); *Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724 (5th Cir. 1977), *rev'd on other grounds,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (no privacy interest); *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131 (4th Cir.1977) (limited privacy interest); *Van Bourg, Allen, Weinberg & Roger v. NLRB,* 751 F.2d 982 (9th Cir.1985) (privacy interest because statements went into painful detail about personalities, activities, and proclivities of employers, union members and officials); *Alirez v. NLRB,* 676 F.2d 423 (10th Cir. 1982) (privacy interest in informant statements); *Joseph Horne Co. v. NLRB,* 455 F.Supp. 1383 (W.D.Pa.1978) (no private matters present); *Associated Dry Goods Corp. v. NLRB,* 455 F.Supp. 802 (S.D.N.Y. 1978) (all private matters deleted).

■ Under the Sixth Circuit standard for assessing privacy interests, this

Court must conclude that the documents in question contain some information about discharges, medical problems and third parties that could lead to embarrassment or harassment if disclosed.[3] Several factors, however, cause this Court to hold that the potential for invasion of privacy is substantially less than in those cases barring disclosure. First, the contested documents in this case are all some form of charging party statements. They are made by employees or unions to the Board in furtherance of requests that the General Counsel issue a complaint against an employer or union. Any civil litigant who utilizes the adversarial system of justice to redress a grievance party can expect that certain facts about his life relevant to the grievance will be exposed. This is a by-product of the search for truth. Aware of this, a charging party can tailor his affidavit or position statement to minimize disclosure of private information. Thus, charging party statements are different from a witness statement given in response to an initiative of the Board. A charging party must accept an invasion of privacy as an incidental cost of prosecuting his claim. Such invasions are certainly not unwarranted.[4]

■ Second, the purpose for which the plaintiffs seek the documents is important. They seek to investigate the Board's alleged inconsistency in handling hiring hall cases and to urge specific remedial legislation. The information will be used to search for a pattern of behavior on the part of the Board and to compile the appropriate statistics. It is unlikely then that specific

private material will ever be exposed to the public. This case may therefore be distinguished from *Alirez v. NLRB*, 676 F.2d 423 (10th Cir.1982), where the withholding of witness statements under 7(C) was upheld. The statements there regarded threats of violence and retaliation, allegations of assaultive conduct, and explicit charges of sexual deviancy. *Id.* at 425. They were sought by a charging party whose charge was dismissed. The court ruled that disclosure could constitute a serious invasion of privacy because, even with names and other identifying data deleted, the plaintiff/charging party and employer could discover the identity of the informants from the specificity of the statements and retaliate. By contrast, the plaintiffs here do not have a motive for harassing or embarrassing any of the charging parties. The plaintiffs are involved in only one of the 58 cases. Their stated and apparent purpose for requesting the information has nothing to do with the individual charging parties or other persons mentioned in the documents and poses no threat to their privacy.

■ This brings us to the second prong of the Sixth Circuit test—balancing the invasion against the public benefit derived from disclosure. It must be noted here that the interest of the private litigant does not weigh in the balance. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981). This lack of public interest thwarted several plaintiffs whose sole goal was to further their own interests. *Brown, supra; Kiraly v. FBI*, 728 F.2d 273 (6th Cir.1984); *Miller v. Bell*, 661 F.2d 623 (7th Cir.1981); *Alirez v.*

---

3. The Board claims that disclosure of a charging party's cooperation with the Board or his union sentiments would constitute an invasion of privacy. The Court does not agree. All charging parties file charges which are public documents. (See doc. 31, Attachment 1, for the instant charges). The charges contain the party's name and union sentiments, and the filing of the charge implies cooperation with the Board. Any harassment or embarrassment that would result would follow from these filings, not from a later FOIA disclosure. Thus this case is distinguishable from *Madeira Nursing Center* where union authorization cards were properly withheld. In such cases involving representational

elections, the objective is secrecy. *Pacific Molasses v. NLRB*, 577 F.2d 1172, 1182, (5th Cir. 1978). Secrecy is not the objective of unfair labor practice cases. Further, most of the charging parties herein are in labor unions. Their sentiments are obvious. Those that are not are usually claiming discrimination because of their union sentiments. The Court fails to see why such information needs protection from disclosure.

4. It is worthy of note that the Board has disclosed three of the contested documents to a third party. (See doc. no. 31 at 11)

*NLRB,* 676 F.2d 423 (10th Cir.1982). While the plaintiffs herein may derive some residual benefit from their investigation into the Board's handling of hiring hall cases and the proposed legislation, it is the public that will primarily benefit. The Board is a powerful agency possessing almost total discretion over the issuing of a complaint.[5] It must be held accountable to its congressional mandate, and private parties have an important part to play in seeing that it is. The potential benefit to the public from disclosure of the documents is therefore great.

■ With weight on both sides of the scales, the Court should seek a "workable compromise." *Dep't of Air Force v. Rose,* 425 U.S. 352, 382, 96 S.Ct. 1592, 1608, 48 L.Ed.2d 11 (1986). The FOIA itself requires that disclosable material be severed from nondisclosable material when possible. 5 U.S.C. § 552(b) (1982). There is ample precedent for ordering disclosure of documents after deletion of identifying or private matters. *Rose, supra; Heights Community Congress v. Veterans Administration,* 732 F.2d 526 (6th Cir.1984); *Miller v. Bell,* 661 F.2d 623 (7th Cir.1981); *Associated Dry Goods Corp. v. NLRB,* 455 F.Supp. 802 (S.D.N.Y.1978). Accordingly, all documents disclosed as a result of this Order shall have deleted from them all names, addresses, telephone numbers, and social security numbers. Such deletions should help protect any privacy interest while benefitting the public by disclosure. Redaction cannot, of course, eliminate all risks of identifiability. 425 U.S. at 381, 96 S.Ct. at 1608. The risks here, however, are not unwarranted, especially in light of the FOIA's "dominant objective" of disclosure. *See id.* at 361, 381–82, 96 S.Ct. at 1608. Disclosure of redacted documents appears to represent a workable compromise among the competing interests involved.

**3.** *Exemption 7(D)*

■ This exemption protects from disclosure documents that would "disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source...." 5 U.S.C. § 552(b)(7)(D) (1982). It applies when an agency gives the source of the information an express or implicit guarantee of confidentiality. *Van Bourg, Allen, Weinberg & Roger v. NLRB,* 751 F.2d 982, 986 (9th Cir.1985). An express guarantee of confidentiality was given in the case of each of the instant charging affidavits. At the top of each affidavit appears the following language:

> I have been given assurances by an agent of the National Labor Relations Board that this affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the government to produce the affidavit in a formal proceeding. Upon the closing of this file, the affidavit may be subject to disclosure only in accordance with Agency policy.

(Doc. No. 21, Attachment 1). In the case of the position statements, no guarantee was given and the Board claims no 7(D) exemption. With the transcribed telephone statements, no explicit guarantees were given, but the Board insists that such guarantees are implicit. The Court finds no reason to treat the telephone transcriptions differently from the written affidavits since the Board no doubt intended that the same guarantee of confidentiality applied to both types of statements.

Exemption 7(D) does not apply in this case for two reasons. First, the identity of charging parties is a matter of public record. Exemption 7(D) thus has no prac-

---

**5.** Private parties cannot file complaints for violation of the National Labor Relations Act. This power is vested in the Board. 29 U.S.C. § 153(d) (1982). A private party believing himself the victim of an unfair labor practice must use the charging process to persuade the Board to issue a complaint. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 139, 95 S.Ct. 1504, 1511, 44 L.Ed.2d 29 (1975).

tical application to charging party affidavits. Second, by its very terms, the Board's guarantee of confidentiality applies only while the case is pending. Once the case is closed the affiant is told that the affidavit may be disclosed. The Court sees no reason to grant the charging parties a greater measure of confidentiality than that explicitly provided in the Board's guarantee. Limiting confidentiality to pending cases is consistent with dicta in a recent Sixth Circuit case noting that Exemption 7(D) applies only in closed cases. *Seegull Manufacturing Co. v. NLRB,* 741 F.2d 882, 886 (6th Cir.1984). In fact, all courts that have considered Exemption 7(D) in an NLRB context have found it inapplicable. *Van Bourg, supra; Poss, supra; Deering Milliken, Inc., supra; Nemacolin Mines Corp. v. NLRB,* 467 F.Supp. 521 (W.D.Pa. 1979); *Associated Dry Goods Corp., supra.* The Board's main support for expanding the confidentiality protection of Exception 7(D) comes from criminal and Occupational Health and Safety Administration cases which involve significantly different procedures. *See, e.g., Diamond v. FBI,* 707 F.2d 75 (2d Cir.1983); *U.S. Steel Corp. v. Dep't. of Labor,* 558 F.Supp. 80 (W.D.Pa.1983).

Since the cases herein involve publicly known charging parties in closed NLRB cases, and since disclosure is in keeping with the terms of the Board's confidentiality guarantee, the Court finds Exemption 7(D) inapplicable.

### III. *Conclusion*

The Board is hereby ordered to disclose to plaintiffs all documents forming the subject of this suit. Before disclosure, however, the Board shall delete all names, addresses, telephone numbers, and social security numbers. Plaintiffs are ordered to submit their application for attorney fees in a separate motion that satisfies the requirements of this Court's "Instructions for Trial Preparation."

IT IS SO ORDERED.