**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MIAMI COCA–COLA BOTTLING COM-PANY, Respondent.**

No. 20288.

United States Court of Appeals Fifth Circuit.

Nov. 26, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Paul J. Spielberg, Bernard M. Dworski, Attys., N.L.R.B., Washington, D. C., for petitioner.

O. R. T. Bowden, David A. Bartholf, Jacksonville, Fla., for respondent.

Before TUTTLE and WISDOM, Circuit Judges, and FISHER, District Judge.

WISDOM, Circuit Judge:

This matter is before us for the third time. In September 1962, the National Labor Relations Board, after an unfair labor practice proceeding, issued a decision and order directing Miami Coca-Bottling Company to reinstate with back pay certain employees discriminatorily discharged in violation of §§ 8(a) (3) and (1) of the National Labor Relations Act. In November 1963, this Court entered a decree enforcing the Board's decision and order. 324 F.2d 501. The Trial Examiner conducted hearings in June and in August 1964 to determine the amount due each discriminatee. Thereafter, the Board, in its Supplemental Decision and Order issued April 14, 1965, affirmed the Trial Examiner's decision requiring the respondent to pay specified amounts of backpay to the discriminatees. 151 NLRB 1701. In August 1966, this Court upheld the Board's position except with regard to one of the discharged employees, Robert W. Shepard. 360 F.2d 569. As to Shepard, the Court overruled various objections to his being awarded backpay, but sustained the respondent's contention that the Trial Examiner erred in prohibiting the employer's cross-examining Shepard about his sources of income during the backpay period. We remanded the relevant portion of the order, holding that the examiner "should have permitted the cross-examination [of Shepard] in order to obtain a 'full and true disclosure of the facts'". 360 F.2d at 577.

On remand, a supplemental hearing was held October 3, 1966, devoted exclusively to cross-examination of Shepard by Mr. David A. Barthoff, one of the attorneys for the respondent. At the end of the hearing, Mr. Barthoff reserved the right to file a brief. The Trial Examiner set October 24 as the due date. On October 12 the Examiner received the respondent's application for leave to take depositions of Robert Shepard, his wife, Mrs. Irene Shepard, John Mackie (owner of the Klondike Bar, where Mrs. Shepard had been employed), and Mickey Killen (Shepard's employer during the first year of the backpay period). On October 18 the respondent filed a Motion for Extension of time for filing his brief. Several days later, Mr. Barthoff requested that he be allowed to take the depositions or, in the alternative, that the hearing be reopened to permit the respondent to examine the four witnesses on the open record. The Trial Examiner denied these applications. He issued his Supplemental Decision on Remand on November 1, 1966, reaffirming his original award to Shepard since, despite the "considerable latitude" given the respondent in cross-examining Shepard, no evidence was adduced to alter the original determination. March 27, 1967, the Board adopted the findings and recommendations of the Trial Examiner and now asks us to enforce its order.

The respondent opposes enforcement of the Board's order on the ground that it did not receive a "full and fair" hearing upon the remand.

I.

Before the second hearing the Company filed an application to take the depositions of Shepard and others. The Company sought to question Shepard as to the whereabouts of two interim employers, Mickey Killen and Jimmy Dico, allegedly because it had not been able to locate these men before the original backpay hearing. The Regional Director denied this request for two reasons: at the first hearing Shepard had been examined about his earnings while employed by Killen and Dico, so that consideration of these sources of information was outside the scope of the re-

mand; Shepard would be presented as a witness at the hearing.

The respondent then filed Interrogatories and a Second Application for Leave to Take Depositions. This application stated that the respondent "desires to take the deposition * * * regarding not only the matters set forth in the earlier application * * * but also to probe Shepard's other sources of income during the backpay period, in order to properly prepare for the hearing". The interrogatories asked that Shepard state "all sources of income, of whatever nature", including "fringe benefits of any monetary value" during the backpay period. The Director denied both requests, stating that "the Board's procedures make no provision for pre-trial discovery (Walsh-Lumpkin Wholesale Truck Company, 129 NLRB 294, 296) and that the requirement of § 10(b) of the Act, that unfair labor practice proceedings before the Board 'shall so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States' relates only 'to the introduction of evidence before the Board and not to the pre-trial privileges accorded parties to judicial proceedings' Del E. Webb Construction Company, 95 NLRB 377, footnote 2". The Director concluded therefore that the respondent had shown "insufficient cause why protection of its rights requires a pre-hearing examination of Robert W. Shepard in this situation".

■ If he meant, as he seems to say, that there is no pre-trial discovery in labor proceedings, the Director erred. The Board's regulations expressly provide for pre-trial depositions, "if in his discretion good cause has been shown". 29 C.F.R. § 102.30(a). In a similar case, N.L.R.B. v. Safeway Steel Scaffolds Company of Georgia, 5 Cir. 1967, 383 F.2d 273, this Court pointed out that § 102.30(a) provides for the taking of pre-trial depositions and that § 10(b) of the Act "would appear to give a trial examiner authority to permit the taking of depositions in any case where such a procedure would be practical". We concluded that "the examiner was wrong in holding that there is absolutely no provision for pretrial discovery". 383 F.2d at 277. If discovery is practicable in the circumstances of the case and if it is not used to harass or coerce employees, "[t]he Board, acting in a quasijudicial capacity as it does, should freely permit discovery procedure in order that the rights of all parties may be properly protected". N. L. R. B. v. Southern Materials Company, Inc., 4 Cir. 1965, 345 F.2d 240.

In his brief filed in this Court, General Counsel apparently overlooked the Director's error. The brief rephrases the Director's reasons as based "on the grounds that the Board's procedures make no provision for pretrial discovery *as a matter of right*, and respondent had shown 'insufficient cause' to believe such discovery was *essential* to the 'protection of its rights' ". (Emphasis added.)

■ As in *Safeway Steel*, however, the error was not fatal. The Director reached the right result in spite of using the wrong reason. At the original backpay hearing the Company was permitted to question Shepard freely about his employment by Killen and Dico. The record demonstrates that the respondent knew of their addresses at the hearing, if not before. Mr. Barthoff and Shepard agreed that Killen's correct address was 665 Northeast 66 Street, and Mr. Barthoff indicated that he had received this information the preceding Saturday. As to Dico, Mr. Barthoff referred to an "address which we found out from [Shepard] this morning". Thus, if the respondent failed to interview Killen and Dico, it was not for lack of information as to their whereabouts; the respondent did not need to depose Shepard in this regard. Nor was it necessary to depose him as to "other sources of income". He was presented as a witness, and the Company was given an unlimited opportunity to question him at the remand

hearing. In short, the respondent failed at the threshold to present good cause to take prehearing depositions.

## II.

Second, the respondent contends that at the remand hearing the Trial Examiner "unlawfully limited" the scope of the cross-examination of Shepard. The purpose of the hearing was to permit the Company to establish Shepard's income during the backpay period, and in particular during the first year when the Board's backpay specification showed only $400 earned, as an employee of Mickey Killen. Questioned by respondent's counsel, Shepard testified that during that first year he had withdrawn "approximately $1000 from a credit union account, had received about $330 in unemployment compensation, and had also lived on his wife's earnings as a waitress at the Klondike Bar—"between the tips and what other money she made probably $75 a week".

It is true that the Trial Examiner sustained objection to certain questions as vague. The respondent particularly objects to its not being allowed to ask Shepard if he had received any other "things of value" during the backpay period from any persons other than those he had already named in the earlier hearing. Later, however, the Company was permitted to elicit the specific income information. It was also permitted to ask whether Shepard had received "any other things of monetary value during the first year following [his] discharge". When Shepard answered "No," the Company followed up with questions about his receiving "any other things of monetary value" from "any interim employer" or "from any other person other than those you have already named". To make sure Shepard understood what the Company meant by "monetary value", Shepard was asked specifically about "any fringe benefits which you did not testify to before, such as the use of a Company car, hospitalization or other insurance, clothing allowance, cleaning allowances, Company uni-

form * * * free lunches * * * free transportation". To all these questions, Shepard answered "No." In effect, the Company was permitted unlimited inquiry into Shepard's income during the backpay period, from whatever source and in whatever form.

## III.

Third, the respondent objects to the examiner's refusal to reopen the hearing because of newly discovered evidence.

Two days after the hearing, Mr. Barthoff telephoned John Mackie, owner of the Klondike Bar where Mrs. Shepard had worked in 1961–62. Mr. Mackie informed him that Mrs. Shepard had worked only part-time, was paid only $25 a week in wages, and had received "almost nothing" in tips. This information contradicts Shepard's testimony that while out of work he lived on his wife's weekly earnings of $75. Moreover, it would imply that Shepard had other, undisclosed sources of income that should be set off against the backpay award.

The Company, in applying for a reopening of the hearing, pointed out that the Regional Director's denial of prehearing discovery had made it impossible for the Company to reach Mackie until after the hearing. It, therefore, applied for leave to depose Mackie, Shepard and others, or, in the alternative, to reopen the hearing. Mackie's name did not come up until the hearing. Since the Company was denied discovery, the Company could pursue Mackie's story only by a post-hearing investigation.

On this showing, the Trial Examiner might properly have reopened the hearing. But it was not an abuse of discretion to deny the respondent's motion. There comes a time when even labor hearings must draw to an end. This case has crawled along since 1962.

Even assuming that Mrs. Shephard's tips did not exceed $5 per week, and her salary amounted to $25, her weekly earnings of $30 would come to $1600 yearly. And, as the remand hearing de-

veloped, to this sum must be added what Shepard was paid by Mickey Killen ($440), drew from savings ($1000), and received from unemployment compensation ($330). The total is $3300 during this year—enough to exist on, if not to live well.

Moreover, the Trial Examiner was entitled to be skeptical about the reliability of Mackie's report of Mrs. Shepard's earnings. Mackie gave this information —about matters four or five years before—off the top of his head. It is difficult to understand why respondent did not immediately interview Mackie and examine his records to ascertain the actual facts about Mrs. Shepard's employment. Not having done so, the Company was not in a position to make the specific offer of proof which the Board's rules contemplate (§ 102.48(d)), when it sought to have the Trial Examiner reopen the hearing. Nor did it investigate this matter later, so that when it appealed from the Trial Examiner to the Board, it still had nothing more probative to offer on the question of Mrs. Shepard's earnings than the report of a phone call to Mackie.

The Trial Examiner and the Board could reasonably conclude that the respondent's allegation about Mackie, even if true, would not require it to discredit Shepard's testimony and disqualify him from any award of backpay. Accordingly, the Board did not abuse its discretion in refusing to reopen the hearing.

## IV.

Finally, the Company contends that the Trial Examiner's refusal to extend the time for filing its brief requires another remand. The record is short. The only issues are procedural. These were argued in the post-hearing applications for depositions or for reopening the record. The Trial Examiner's action did not prejudice the Company's case. See Safeway Steel and the cases there cited. 383 F.2d at 277.

Accordingly, the Board's Second Supplemental Order should and will be enforced.