**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**W. R. BEAN & SON, INC., Respondent.**

**No. 71–1417**

**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1971.

Rehearing Denied Jan. 12, 1972.

* [1]  Rule 18, 5th Cir.  See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 431 F.2d 409, Part I (5th Cir. 1970).

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Walter C. Phillips, Director, Region 10, William E. Caldwell, Atty., N.L.R.B., Atlanta, Ga., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, William J. Rains, Regional Atty., Region 10, N.L.R.B., for petitioner.

Frank E. Specht, Robert C. Lemert, Jr., Smith, Currie & Hancock, Atlanta, Ga., for respondent.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order issued against W. R. Bean & Son, Inc. (Company) finding it in violation of Section 8(a) (1) and (3) of the National Labor Relations Act [1] by its discharge of a single employee, Rosa Ruth Holmes, for engaging in union activity.[2]

The Company challenges the Board's determination as not supported by substantial evidence on the record as a whole and questions the appropriateness of the relief ordered by the Board. The Company further argues that the rulings of the Trial Examiner on discovery motions and evidentiary matters constituted prejudicial error and denied the Company due process of law.

We consider it unnecessary to outline the evidence in detail and therefore make only a brief summary of the facts involved. Holmes was originally employed by the Company in July 1965 and was first discharged that same month. The Board subsequently found that her discharge on that occasion resulted from her activity on behalf of the Atlanta Bookbinders' and Binderywomen's Union, Local 96 (Union). Pursuant to the Board's order [3] Holmes was reinstated as a regular, part-time employee whose primary function was to work Sunday and Monday nights in the Company's bindery.

In February 1969 the Union was certified by the Board as the collective bargaining representative for the Company's employees. During the organizational campaign Holmes distributed union authorization cards and supported the Union's efforts in conversations with fellow employees and at meetings of employees called by the Company. Following the certification, Holmes was elected as one of three employees to serve on the Union negotiating committee.

On March 13, 1969, Holmes was notified at work that her mother had died unexpectedly. She was excused from work by her foreman, Jerry Baker. The Board found that she remained away from work approximately three weeks. During the period of her absence, Holmes telephoned Baker and told him that she was thinking about returning to work. Baker told her to let him know when she was going to return.

Holmes returned to work in the first part of April. On April 11, 1969, Holmes attended the first Union bargaining session with Company officials and several other employees.

On April 20, 1969, Holmes was notified at work that her son had been killed in an automobile accident and she left work with Foreman Baker's knowledge. Although the evidence is in violent conflict, the Board credited Holmes' testimony that after she had been off for some time as a result of this second tragedy she called Baker and told him that she was still upset and would like to have additional time before returning to work. The Board found that Baker then expressed his understanding and told Holmes to take her time about returning. It is clear that sometime near the middle of May Holmes asked a fellow employee, Violet Davis, to speak to Foreman Baker about a possible change in

1. 29 U.S.C.A. § 158(a) (1) and (3) (1965).

2. The Board's decision is reported at 185 N.L.R.B. No. 81.

3. 158 N.L.R.B. No. 64 (1966).

Holmes' work shift. The Board credited Davis' testimony that Baker told her that he saw no reason why Holmes could not change shifts and that when Holmes got ready to come back to work to report to Superintendent Carter's office and discuss the subject with him.

The second union bargaining meeting was held on May 15, 1969. At that time Holmes had not returned to work, but at the insistence of employee Davis and union representative Crunkleton, Holmes did attend the May 15 meeting. Vice President Campbell testified that he was shocked to see her at the meeting and that following the meeting Vice President Campbell and one of the Company owners discussed their surprise at seeing Holmes at the meeting. According to evidence presented by the Company, the next day Vice President Campbell completed a review of Holmes' absentee record and made the decision to discharge her. The Company claims at the time of the May 15 meeting they had already begun to review Holmes' absentee record with a view toward termination. But nothing was said to Holmes by any Company official during or after the May 15 meeting about her attendance at the meeting or about her not yet having returned to work.

Holmes did not attend the third bargaining meeting on May 23. Although the Company claimed that at this meeting the Union representatives were informed that Holmes had been discharged, the Board credited the Union representatives' testimony that they were told only that Holmes was being considered for discharge. Holmes was not told of this conversation.

Not until the opening of the next bargaining meeting on May 29, 1969 was Holmes informed by the Company that she had in fact been fired. Notice of her discharge dated May 19, 1969 was received by her through the mail when she returned home after the meeting.

There is conflicting evidence regarding the facts and motives surrounding this discharge. The Company claims that Holmes was discharged because of excessive absences during 1968 and 1969. It argues that actually Holmes was afforded preferential treatment as a Board reinstated employee, and that she was discharged only after a review of her absentee record indicated that it was more excessive than any other employee in the Company.

However the Board concluded that notwithstanding Holmes' record of excessive absenteeism, the Company did not become upset about the absenteeism until she attended the May 15 bargaining session. The Board further found that Holmes' absences in April and May had been excused by Foreman Baker, and concluded that her absenteeism was a pretext for a discriminatory discharge tending to discourage union activity and interfering with the protected rights of employees.

On this record the case would be close no matter in whose favor the Board had found. Upon consideration of the whole record it is our opinion that in this dispute the angels probably stand with neither side.

There is substantial evidence in the record to indicate that Mrs. Holmes was discharged for clearly excessive absences during 1968–69 after having received a number of warnings and that she failed to receive notice of her discharge before the May 29 meeting because she had not even then returned to work.

■ But there is also evidence in the record that Mrs. Holmes was an active union adherent and organizer who had been previously discharged for union activities and reinstated by the Board and who was now a member of the negotiating committee. The evidence indicates that during the latter part of 1968 Vice President Campbell had reviewed Holmes' record and had decided at that time not to discharge her. There is evidence to support the conclusion that the decision to discharge Holmes was made by Vice President Campbell the day after he was shocked to see her attend and participate in a union negotiating ses-

sion on May 15, 1969, while she was on an extended absence, excused by her foreman as a result of two tragic deaths in her immediate family in little over a month's time. Further, the record discloses that the decision to discharge Holmes was made without notifying her that the Company expected her to return to work or without warning her that she would be discharged if she did not return. We are therefore of the opinion that there is substantial evidence on the record as a whole to support the conclusion of the Board that Holmes' discharge was discriminatory and interfered with the protected rights of employees under Section 8(a) (1) and (3) of the Act.

■ Well established rules permit only a very narrow scope of review in agency proceedings limited to a determination of whether the actions and conclusions made by the agency are supported by substantial evidence on the record considered as a whole. Universal Camera v. N.L.R.B., 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456 (1951); 5 U.S.C. A. § 706 (1967). And where, as here, there is substantial evidence to support both the findings of the Board and the contentions of the party seeking review, we must properly defer to the decision of the Board. We may not displace the Board's choice between two fairly conflicting views and inferences, even though the court would justifiably have made a different choice had the matter been before it *de novo*. N.L.R.B. v. Mira-Pak, Inc., 354 F.2d 525, 527 (5th Cir. 1965).

The Company also claims that even if Holmes' discharge was discriminatory, she was not a *bona fide* employee at the time of her original discharge and reinstatement in 1965. In pursuit of this theory the Company sought discovery in advance of trial and attempted to introduce evidence on the question at the hearing. The Company now contends the Hearing Examiner and the Board erred and deprived the Company of due process of law in refusing to permit discovery concerning this prior case and excluding evidence at the hearing.

■■ Although the Board's rules at 29 C.F.R. §§ 102.30–102.32 and Section 10(b) of the Act[4] appear to give the Trial Examiner the authority to permit pre-hearing discovery in any case where such procedures would be practicable or necessary to the adjudication of the issues in the case, N.L.R.B. v. Safway Steel Scaffolds Co. of Georgia, 383 F.2d 273 (5th Cir. 1967), cert. den. 390 U.S. 955, 88 S.Ct. 1052, 19 L.Ed.2d 1150 (1968); N.L.R.B. v. Miami Coca-Cola Bottling Company, 403 F.2d 994 (5th Cir. 1968) it is within the discretion of the Trial Examiner to grant or deny discovery procedures. *Safway Steel Scaffolds Co., supra*. In this case it does not appear that the Trial Examiner or the Board abused their discretion in refusing to permit the Company discovery in order to find evidence of fraud in connection with the uncontested Board proceeding five years earlier. Nor does it appear that the Examiner or the Board erred in limiting the evidence at the hearing to the events and circumstances surrounding the 1969 discharge. Any possible technical error in denying discovery and the introduction of evidence regarding the earlier discharge was not prejudicial to the Company's case.

■ The Company further argues that Holmes was part of a devious scheme by the Union to manufacture an incident in an attempt to strengthen its bargaining position with the Company. However there is no evidence anywhere in the record that Mrs. Holmes deliberately concocted a plan to become discharged as a result of her absence from work on the occasions of the death of her mother and her son. This case is therefore clearly distinguishable from Whittaker Corp. Advanced Metals Technology Division, 179 N.L.R.B. No. 138 (1969) on which the Company seeks to rely.

4. 29 U.S.C.A. § 160(b) (1965).

The Company's contention that it was misled by the recital in the complaint that Holmes was discharged on May 10, 1969 instead of May 29, 1969 is wholly without merit.

Considering the contentions of the parties and the record as a whole, we find no prejudicial error and we can not say that the findings and conclusions and the scope of relief ordered by the Board are not supported by substantial evidence. Accordingly, the order of the Board is enforced.