**ROBBINS TIRE AND RUBBER COMPANY, Plaintiff-Appellee,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant-Appellant.**

No. 76–2099.

United States Court of Appeals, Fifth Circuit.

Nov. 21, 1977.

---

William Wachter, Act. Asst. Gen. Counsel for Sp. Litigation, Aileen Armstrong, Atty., N.L.R.B., Washington, D.C., Gilbert Cohen, Regional Atty., Region 10, N.L.R.B., Atlanta, Ga., for defendant-appellant.

William M. Earnest, Robert L. Thompson, David M. Vaughan, Atlanta, Ga., Charles A. Poellnitz, Florence, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD, Circuit Judge, and MEHRTENS, District Judge.[*]

GODBOLD, Circuit Judge:

This is a Freedom of Information Act (FOIA)[1] case, although it takes on the troubling coloration of a dispute about the discovery rights of respondents in National Labor Relations Board proceedings. The district court[2] ordered the NLRB to turn over to Robbins Tire copies of all written statements of those who will be called to testify[3] in a consolidated representation and unfair labor practice proceeding involving that company. The order required that these documents be transmitted "on or before April 22, 1976, or, at the election of the Board, on or before a date which is at least five days prior to any hearing where the person making the statement or affidavit will be called as a witness."[4] A panel of this court has denied the Board's motion for a stay pending appeal, and the NLRB hearing has been held in abeyance for over a year pending the outcome of this appeal. We affirm.

First, there is a jurisdictional problem. The Board argues that the effect of the order to disclose statements of witnesses was to enjoin its proceeding against the company. It casts its argument as an exhaustion requirement, citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), and asserting that Robbins Tire would suffer no irreparable injury if forced to challenge the Board's

---

[*] Senior District Judge of the Southern District of Florida, sitting by designation.

[1.] 5 U.S.C. § 552, *as amended by* Act of Nov. 21, 1974, Pub.L. No. 93–502, 88 Stat. 1561.

[2.] 92 L.R.R.M. 2586 (N.D.Ala., 1976).

[3.] We do not know how many of those whose statements are sought here are employees of Robbins Tire, since the Board has never disclosed the materials even to the district court in camera. The court found it unnecessary to resort to in camera inspection of the statements because neither party disputed that they were prepared for use in the Board proceeding.

[4.] The company had sought a longer preparation period of seven days.

action afterwards on appeal, 29 U.S.C. §§ 160(e)–(f). *See also Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); 51 St. John's L.Rev. 251, 254 n. 17 (1977). We need not decide whether or when a district court adjudicating a FOIA claim may enjoin ongoing or prospective NLRB proceedings in an effort to compel the disclosure required by the Act. In this case, the district court did not enjoin the hearing. The Board argues that this was the effect of its order. But whether or not an order constitutes an injunction is a question that does not turn on the subjective importance attached to it by the defendant and his resulting action in the circumstances. Like similar orders in the more conventional discovery context, this one gave the NLRB a choice. It could produce the statements, it could proceed without resort to the testimony of these particular affiants or it could forego the hearing. While the unpalatability of this choice might well form part of the rationale for finding a substantive exemption under FOIA,[5] it cannot be transformed into a jurisdictional question by the Board's decision to hold its hearing in abeyance.

**5.** *See New England Medical Center Hosp. v. NLRB,* 548 F.2d 377, 384 (CA1, 1976) (denying FOIA disclosure on the merits, under exemption 7(A), for the same reasons). *But see* note 29, *infra.*

**6.** Judge Oakes' rationale in *Title Guarantee,* which unlike our case did not involve a request limited to statements of prospective witnesses, has been persuasive enough to have formed the basis of every subsequent appellate decision under FOIA involving statements obtained by the NLRB in the course of unfair labor practice investigations. All of these cases have held exemption 7(A) applicable. *Goodfriend Western Corp. v. Fuchs,* 535 F.2d 145 (CA1), *cert. denied,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 178 (1976); *New England Medical Center Hosp. v. NLRB,* 548 F.2d 377 (CA1, 1976); *Roger J. Au & Son, Inc. v. NLRB,* 538 F.2d 80 (CA3, 1976); *NLRB v. Hardeman Garment Corp.,* 557 F.2d 559 (CA6, 1977); *Abrahamson Chrysler-Plymouth, Inc. v. NLRB,* 559 F.2d 1226 (CA7, 1977); *Harvey's Wagon Wheel, Inc. v. NLRB,* 550 F.2d 1139 (CA9, 1976); *Waldo Hosp. Ass'n, Inc. v. NLRB,* No. 76–3315 (CA9, Mar. 10, 1977) [unpublished Order]; *Climax Molybdenum Co. v. NLRB,* 539 F.2d 63 (CA10, 1976);

*Exemption 7(A)*

The Board asserts that the statements of prospective witnesses fall within exemption 7(A), which protects against disclosure of "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . ." 5 U.S.C. § 552(b)(7)(A). The issue here is whether pre-hearing disclosure of the contents of statements made by those prepared to testify in support of the Board's case would actually "interfere" with the Board's case. In *Goodfriend Western Corp. v. Fuchs,* 535 F.2d 145 (CA1) (per curiam), *cert. denied,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 178 (1976), the First Circuit has held that it would.

We think our answer can be found by ascertaining what Congress meant by "interfere," bearing in mind the dictum that FOIA was a comprehensive effort to publicize all agency action and that its exemptions are to be narrowly construed. *Department of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11, 21 (1976). As Judge Oakes explained in the leading case of *Title Guarantee Co. v. NLRB,* 534 F.2d 484 (CA2), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976),[6]

*Cessna Aircraft Co. v. NLRB,* 542 F.2d 834 (CA10, 1976); *Maremont Corp. v. NLRB,* 79 CCH Labor Cases ¶ 11,790 (CA10, Oct. 5, 1976). *But see* 45 Geo.Wash.L.Rev. 114 (1976); 51 St. John's L.Rev. 251 (1977).

Several of these cases have expanded *Title Guarantee's* protections. As noted above, *Goodfriend* extended it to refuse a request limited to statements of those who would testify at a trial scheduled 24 hours later. *New England* applied it to exempt (1) statements of non-employees and (2) statements obtained in closed cases bearing a close temporal and factual relationship to pending cases. *But cf. Harvey's Wagon Wheel* (remanding for an initial determination of the applicability of exemption 7(A) to non-employee statements). Finally, *Climax Molybdenum* treated *Title Guarantee* as a per se rule, eliminating any need for an in camera inspection of the statements as permitted by 5 U.S.C. § 552(a)(4)(B).

On the other hand, *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131 (CA4, 1977), while in dictum accepting the rationale of *Title Guarantee,* has refused to extend exemption 7(A) to

this language was the result of a change offered by Senator Hart to the 1974 amendments to the FOIA after the bill had been reported out of committee. The purpose of Senator Hart's proposal was to restore the original intent of FOIA to require the agency to make a particularized showing that an investigatory file's disclosure would harm its case in court. "[I]t is only relevant to make [the exemption 7(A)] determination," Senator Hart emphasized, "in the context of the particular enforcement proceeding." [7] By making this change, Congress sought to eliminate unfounded judicial notions that a document's mere status as investigatory and enforcement-related would be sufficient to justify nondisclosure. Thus, the legislative history of exemption 7(A) reveals a sort of procedural emphasis.[8] Such an emphasis is strongly supplemented by the tenor of the 1974 amendments even before Senator Hart's change. As Senator Kennedy, the principal author and floor leader of the amendments, remarked, "With

the new provisions it should be clear that there can be no blanket claim of confidentiality under any of the exemptions." Source Book 293.

We move next to the more substantive inquiry of what kind of interference Congress was concerned about avoiding in each particular case. Our only real clue lies in the remarks of Senator Hart:

> [Exemption 7(A)] would apply whenever the Government's case in court . . . would be harmed by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding.

Source Book 333.[9]

The first sentence here suggests that the concern was with interference in the rather

protect affidavits in the context of a proceeding to determine only backpay claims after liability has been established.

**7.** Staffs of House Comm. on Government Operations and Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts, and Other Documents 333 (Joint Comm. Print 1975) [hereinafter cited as Source Book].

**8.** Senator Hart's adoption of a prior ABA Committee proposal suggests that he was particularly concerned with refusals to disclose investigatory files from closed cases. *See* Source Book 334, 336–39, 351. But we view this as simply a particular manifestation of the need to change the exemption to require an inquiry in each situation as to whether disclosure would actually "interfere." Perhaps closed files might be so closely related to collateral proceedings pending before the agency that disclosure of them would still interfere. *See New England Medical Center Hosp. v. NLRB*, 548 F.2d 377 (CA1, 1976). Conversely, the particular concern with closed files in the legislative history does not indicate to us a determination that disclosure of files in open cases, simply because they are open, would necessarily qualify as interference under exemption 7(A). *Cf.* 45 Geo.Wash.L.Rev. 114, 124 (1976) (footnotes omitted):

> "The *Title* court suggested that exemption 7(A) was enacted in 1974 to resolve the problem of the unavailability of closed investiga-

tory files. The withholding of investigatory files pertaining to closed cases was a particularly egregious abuse of exemption 7 which exemption 7(A) certainly was designed to eliminate. The 1974 amendments, however, were not drafted in terms that require disclosure of closed files and nondisclosure of open files. Congress could have easily formulated such a distinction. The amendments were phrased instead to require agencies to establish under exemption 7(A) that interference with agency enforcement proceedings would result from disclosure. Thus, while the phraseology of exemption 7(A) assumes that nondisclosure can be justified only in the context of a pending enforcement proceeding, it requires the courts to consider whether disclosure would be harmful to that proceeding before granting a 7(A) exemption. This clearly implies that not all documents pertaining to pending proceedings are automatically exempted."

Whether or not all investigatory statements may be per se exempt for other reasons is a question we address below. The point we are making here is that it violates the intent of the Hart amendment to abdicate our responsibility to consider the specific harm to agency processes that disclosure might produce.

**9.** The central challenge to Senator Hart's proposal dealt with exemption 7(D) and the problems of safeguarding the confidentiality of informers so as to maintain effective law enforcement information gathering, with particular

broad sense of premature revelation. Support for this idea can be found in Senator Hart's earlier statement that he wanted to return to the purpose revealed in the legislative history of the 1966 Act. This purpose was "to prevent harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to investigatory files than he would otherwise have." Source Book 332, *quoting from* H.R.Rep. No. 1497, 89th Cong., 2d Sess. (1966), *reprinted in* [1966] U.S. Code Cong. & Admin. News pp. 2418, 2428. If this is what interference means, then we would be obliged to give an FOIA plaintiff-as-public-citizen no more information than he would obtain as a private litigant engaging in discovery before the agency. In *Title Guarantee*, for example, Judge Oakes began his analysis by observing that disclosure "would be tantamount to the issuance of new, broader discovery rules for NLRB proceedings," given Second Circuit limitations on the duty of the Board to grant pretrial discovery. 534 F.2d at 487. However, we think that comparative discovery is not the key to the meaning of exemption 7(A).

■ First, it is questionable whether FOIA disclosure would result in an increase in discovery rights in this court.[10] Al-

though the Second Circuit has held that the National Labor Relations Act does not specifically authorize or require the Board to adopt discovery procedures,[11] this court, emphasizing the authority of 29 U.S.C. § 160(b),[12] has held that "when good cause is shown to the Board it should permit discovery in order that the rights of all parties may be properly protected." *NLRB v. Rex Disposables,* 494 F.2d 588, 592 (CA5, 1974), *citing NLRB v. Safway Steel Scaffolds Co.,* 383 F.2d 273 (CA5, 1967), *cert. denied,* 390 U.S. 955, 88 S.Ct. 1052, 19 L.Ed.2d 1150 (1968); *NLRB v. Miami Coca-Cola Bottling Co.,* 403 F.2d 994 (CA5, 1968); *cf. NLRB v. W. R. Bean & Son, Inc.,* 450 F.2d 93, 96 (CA5, 1971), *cert. denied,* 409 U.S. 849, 93 S.Ct. 57, 34 L.Ed.2d 91 (1972) (*Safway Steel* and *Miami Coca-Cola* place question within discretion of administrative law judge).[13] We have also held more specifically that statements of Board witnesses are discoverable in civil contempt proceedings that the Board brings to challenge noncompliance with appellate court decrees. *NLRB v. Schill Steel Products, Inc.,* 408 F.2d 803 (CA5, 1969).[14] We conclude from these authorities that, with respect to the statements of prospective witnesses, some right to discovery exists under the National Labor Relations Act.[15] Thus, we cannot

---

reference to the efforts of the FBI. *See* Source Book 340–43, 350–51. As a result, little further explication of "interference" exists.

10. *Title Guarantee* recognized this problem. 534 F.2d at 487 n.6.

11. *NLRB v. Interboro Contractors, Inc.,* 432 F.2d 854, 859–60 (CA2, 1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1375, 28 L.Ed.2d 661 (1971).

12. "[NLRB unfair labor practice proceedings] shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States. . . ."

13. The recent FOIA case of *Sealand Terminal Corp. v. NLRB,* 414 F.Supp. 1085 (S.D. Miss.,1976), found the *Rex Disposables* line of authorities unpersuasive arguments for FOIA disclosure because these cases had held that the Board's failure to grant discovery had been harmless error. We do not agree with this logic. We are asking whether FOIA disclosure

would give a litigant earlier or greater access to investigatory files than he would otherwise have. For this purpose, it seems irrelevant whether a Board examiner's error in failing to allow pretrial discovery was harmless. Our only inquiry should be the abstract one of whether the right to discovery exists.

14. The *Schill Steel* panel left open whether its rule would apply to Board proceedings as well, 408 F.2d at 808, as did *Morgan Precision Parts v. NLRB,* 444 F.2d 1210, 1214 & n. 5 (CA5, 1971).

15. We deal with the work product privilege analogy below in addressing the Board's claim under exemption 5. We see no reason why the analogy should provide for any different analysis under exemption 7(A)'s "no earlier or greater access" theory than under exemption 5's express test of "not . . . available by law to a party . . . in litigation with the agency."

   *Title Guarantee* expressly avoided relying on this analogy. 534 F.2d at 491.

agree with the Board's assertion that disclosure of witnesses' statements would inevitably interfere with enforcement proceedings even in the sense that it would always allow litigants greater discovery than they otherwise would obtain.

Second, focusing on comparative discovery rights, even if it gave us a clearer answer, would violate the spirit of the procedural reform sought by the Hart amendment. The change, as we have noted above, sought to require a showing that some "specific harm might result to [the government's] case from disclosure," *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1135 (CA4, 1977). If the mere fact that one could not have obtained the document in private discovery were enough, the Board would have made naught of the requirement that nondisclosure be permitted "only to the extent that . . . production . . . would . . . interfere" in some way. We must interpret the exemption to give meaning to this requirement.

Finally, tying FOIA rights to the discovery rights of the particular plaintiff presents us with a legal conundrum that suggests the improbability of such a congressional intent. In order to apply the comparative discovery test, we must look to the particular needs of the plaintiff (in order to see whether he has shown good cause for production). But the Act mandates release of information "to any person." 5 U.S.C. § 552(a)(3). For this reason, anyone's case is as strong (or as weak) as anyone else's. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513, 44 L.Ed.2d 29, 43 n. 10 (1975): "[Plaintiff's] rights under [FOIA] are neither increased nor decreased by reason of the fact that it claims an interest in the [documents sought] greater than that shared by the average member of the public." Thus, to hold that certain groups—members of the news media, for example—are the real beneficiaries of FOIA is to create a pecking order unjustified by the language of the statute.[16] "[A]ll citizens have a right to know" what their government is doing. S.Rep.No. 813, 85th Cong., 1st Sess. 6 (1965).[17]

In sum, we reject "earlier or greater access" as a kind of interference protected against by exemption 7(A). We think that the protection against interference involves a focus not on the rights of the individual FOIA plaintiff but rather on the problems posed to the particular agency proceeding. We thus proceed to an examination of the possible harms that could befall Board proceedings by pretrial disclosure of witnesses' statements.[18] Indeed, a precise reading of *Title Guarantee* reveals that this was the approach taken there. Although, as we have noted, Judge Oakes referred to the expansion of discovery rights, his finding of

---

16. On the other hand, neither can Robbins Tire gain any leverage under FOIA from the particular unfairness caused here by what some have referred to as the Board's "trial by ambush," *see Capital Cities Communications, Inc. v. NLRB*, 409 F.Supp. 971, 977 (N.D.Cal., 1976).

17. Our problem here is quite similar to that posed by exemption 5, which expressly allows the withholding of memoranda "which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Professor Davis has noted in this context:

"When a memorandum or letter would be subject to discovery by a party whose need for it is strong but not by a party whose need for it is weak, letting required disclosure depend upon the facts about the particular applicant would violate the provision that disclosure must be made to 'any person.' The agency cannot say that one person is 'any person' but that another person is not." K. Davis, Administrative Law Text § 3A.21, at 83 (1972). As a result, he says, "the courts in giving meaning to the fifth exemption have been guided less by discovery law than by the policies behind the fifth exemption." K. Davis, Administrative Law of the Seventies § 3A.21, at 92 (1976). *See also EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119, 131–32 (1973); *Kent Corp. v. NLRB*, 530 F.2d 612, 620–21 & n. 20 (CA5), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).

The exemption 5 problem is one posed by statutory language. The analogous difficulty under exemption 7(A) results from the less persuasive context of remarks in the legislative history. We therefore feel more at liberty to fashion our own definition of interference.

18. The Board has the burden of proving any such harm. 5 U.S.C. § 552(a)(4)(B).

exemption arose not from the mere conclusion that such rights would otherwise be expanded but from the doubt that Congress intended to so expand them in view of a (judicially perceived) likelihood for interference in the proceedings that might result:

> We cannot envisage that Congress intended to overrule the line of cases dealing with labor board discovery in pending enforcement proceedings by virtue of a back-door amendment to the FOIA when it could very easily have done so by direct amendment to Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), or by a blanket enactment pertaining to discovery in pending administrative enforcement proceedings. It is significant that it is never suggested in the legislative history of the 1974 amendment to the FOIA that any such modification of agency discovery rules was intended. . . . In light of the delicate relationship which exists between employer and employee, we think that Congress would be very reluctant to change the rather carefully arrived at limitations and procedures for discovery in unfair labor practice proceedings by way of an act which, while dealing with disclosure generally, does not purport to affect such discovery.

534 F.2d at 491–92 (footnotes omitted). Senator Hart's second sentence in his afore-

mentioned explanation of what he meant by interference (a diminished ability to collect investigatory information) suggests a similar judicial inquiry into the precise nature of the harm to the agency's case.[19]

As we have noted, *Title Guarantee* involved a request for copies of all statements, without regard to whether the affiants would be called to testify. Part of the rationale for denying the right to disclosure was "the delicate relationship which exists between employer and employee."[20] *See also Roger J. Au & Son, Inc. v. NLRB,* 538 F.2d 80, 83 (CA3, 1976) ("peculiar character of labor litigation"); *Climax Molybdenum Co. v. NLRB,* 539 F.2d 63, 65 (CA10, 1976) ("relationship between employer and employee is a delicate one which calls for limitations on discovery"). There is inherent in this concern an assumption that the Board would be unable to obtain testimony from employees to aid in its prosecution if their statements would become the knowledge of their employer. Even discounting the problem that we do not know which of the affiants here are employees,[21] this sweeping assumption of intimidation is inappropriate here, where the request is limited to statements of witnesses. As this court said in *Schill Steel,* "Informers who actually testify . . . surface automatically." 408 F.2d at 805.[22] As the First

---

**19.** We do not interpret *U. S. v. Murdock,* 548 F.2d 599, 602 (CA5, 1977), as requiring any different conclusion here. The *Murdock* panel, dealing with a FOIA plaintiff being prosecuted for criminal tax violations, did go so far as to say:

> "We hold that the discovery provisions of the Federal Rules of Criminal Procedure and the FOIA provide two independent schemes for obtaining information through the judicial process. Although information obtained through the FOIA may be useful in a criminal trial, we find that the FOIA *was not intended* as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure." (Emphasis supplied.)

As in *Title Guarantee,* which *Murdock* cited, we think the underlying rationale lay not in the comparison of discovery rights per se but rather on the special dangers that discovery would pose to a criminal prosecution. These were so great that Congress could not possibly have

intended disclosure. Whether the dangers in this different context are similar is a question we address below.

**20.** Indeed, the peculiar problem of intimidation involved in such a relationship explains why the court restricted its holding to NLRB settings. 534 F.2d at 492.

**21.** *Title Guarantee* involved employee and union affiants, making no distinction in protecting the statements from disclosure because the court felt that union representatives might also be intimidated, through premature disclosure of their negotiating position. 534 F.2d at 485, 491. *But cf. Harvey's Wagon Wheel, Inc. v. NLRB,* 550 F.2d 1139 (CA9, 1976) (remanding on this point).

**22.** *Schill Steel* distinguished *NLRB v. Clement Bros. Co.,* 407 F.2d 1027 (CA5, 1969), in part on the basis that the intimidation problem there resulted from the fact that the discovery sought included statements of non-witnesses, *id.* at 1030–31.

Circuit admitted in *Goodfriend,* "it may well be that [such] circumstances minimize the possible interference with the pending proceedings." 535 F.2d at 147.[23]

In the present situation, there may be some risk of interference with Board proceedings in the form of witness intimidation from harassment of an employee-witness during the five days prior to the hearing,[24] done in an effort to silence him or dilute the nature of his testimony. Such harassment would constitute an unfair labor practice under 29 U.S.C. § 158(a)(4).[25] *NLRB v. Scrivener,* 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972). Any attorney interrogation of the affiants extending beyond "that legitimately necessary for the preparation of respondent's defense" to the underlying unfair labor practice charge would run a risk of incurring section 8(a)(1) liability. *See, e: g., NLRB v. Ambox, Inc.,* 357 F.2d 138, 141 (CA5, 1966); *Texas Industries, Inc. v. NLRB,* 336 F.2d 128, 132–34 (CA5, 1964); *NLRB v. Hardeman Garment Corp.,* 557 F.2d 559, 563 n. 9, (CA6, 1977). Nevertheless, post hoc discipline does not necessarily dissipate the anxieties of those upon whom the intimidation may be visited. We understand the Board's position in this regard, dependent as it is upon charges initiated by

others before it issues its complaints. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 138–39, 95 S.Ct. 1504, 1510–1511, 44 L.Ed.2d 29, 40–41 (1975).[26]

■ However, the Board has not introduced any evidence tending to show that this kind of intimidation (either to physical or employment security) is likely to occur during the five days between discovery and the Board hearing in this case. While we do not purport to establish an exclusive set of criteria for looking at this question, there are numerous factors that bear upon such an inquiry: whether the history of labor relations in the community and at the plant makes intimidation of these witnesses reasonably foreseeable; whether the witnesses work in jobs (with Robbins Tire or not) or have records of job performance that make intimidation of them a likely result of disclosure; the nature of the testimony which the unknown affiants are expected to give. *See Temple-Eastex, Inc. v. NLRB,* 410 F.Supp. 183 (E.D.Tex., 1976) (ordering disclosure of witness statements favorable to employer).[27] Instead, the Board has asserted that in every case the potential for intimidation is so great as to require nondis-

23. In that case the court found interference in the fact that the respondent would gain discovery rights.

24. Harassment after testimony at trial, of course, would be as likely for a witness with or without prehearing disclosure.

25. "(a) It shall be an unfair labor practice for an employer—

. . . . .

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter; . . . ."

26. On petition for rehearing in *NLRB v. Schill Steel Prods., Inc.,* 408 F.2d 803, 807–08 (CA5, 1969), a panel of this court discounted this problem of intimidation during the period between discovery and trial:

"In the petition here the Board asserts that the prospect of pre-hearing discovery is somehow more intimidating than the prospect of discovery under the Jencks Act because it will give the employer more time to confront the informing employee. Given that the name of an informer will be revealed, we confess that we are unable to see the connec-

tion between added time and substantially greater coercion."
*Id.* at 807. We reach our conclusion here without considering whether we could draw the same conclusion about human nature as a matter of law in every Board proceeding as opposed to the rather unique context there of discovery in our own court. *See* note 14, *supra.*

27. The answers to some of these sorts of questions might require in camera inspection pursuant to 5 U.S.C. § 552(a)(4)(B). *Cf. Kent Corp. v. NLRB,* 530 F.2d 612, 624 n. 30 (CA5), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).

Whether or not courts are "ill-fitted to make such determinations," *Climax Molybdenum Co. v. NLRB,* 539 F.2d 63, 65 (CA10, 1976), is irrelevant in the face of what we perceive to be a congressional directive to do so. According to one commentator, even the experts have "strongly held and widely disparate opinions on the reality of employee fear as an inhibiting factor in securing statements from witnesses." 51 St. John's L.Rev. 251, 268 n. 92 (1977).

closure of all statements and affidavits. This sort of per se approach to exemption 7(A) is inconsistent with the procedural reform effected by the Hart amendment. FOIA requires disclosure absent the agency's ability to prove[28] the applicability of exemption 7(A) in the context of the particular proceeding involved. We hold that the Board has not sustained its burden of proving that the possibility of intimidation in this case through disclosure to Robbins Tire brings exemption 7(A) into play.[29]

### Exemption 7(C)

■ Exemption 7(C) protects these statements and affidavits from disclosure only to the extent that production would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The district court rejected this claim since (1) Robbins Tire seeks disclosure only of statements taken from those scheduled to testify at the Board hearing and (2) the Board's own rules[30] allow disclosure of the statements after the direct examination of the witnesses at that hearing.

We agree. The Board concedes that there is nothing unusual in the nature of personal or family details in these affidavits that suggests the need for protection. *See Title Guarantee,* 534 F.2d at 489 n. 10 (dictum). In addition, as the district court noted, this is purely a matter of when the witnesses' statements are to be revealed, and there is therefore no privacy interest

involved. "Disclosure of this same information is not an unwarranted invasion of the claimants' privacy simply because it occurs before the hearing." *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1136 (CA4, 1977). Accordingly, we need not engage in balancing privacy rights against the right of the public to be informed. *Cf. Department of the Air Force v. Rose,* 425 U.S. 352, 370–82 & n. 16, 96 S.Ct. 1592, 1603–1609 & n. 16, 48 L.Ed.2d 11, 26–33 & n. 16 (1976) (exemption 6).

### Exemption 7(D)

■ This exemption protects against disclosure that would "disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). The Board asserts that section 10058.4 of its Case Handling Manual requires that the affiant "should be told the truth—that the information would be used by us in ascertaining the total picture and that this would be its only use unless and until he might be called on to give information in the form of testimony at a formal hearing or in the unlikely event another agency made a valid request upon us for such information." We do not know whether this "express assurance" was given here, and we question how unconditional an assurance of confidentiality it is anyway. However, employee-employer context might in some situations provide "circumstances from which such an assurance could be reasonably inferred."[31] *Cf. Texas Industries,*

---

**28.** The Board's per se rule would not satisfy the burden FOIA imposes even if it had resorted to the sort of conclusory affidavit employed to provide "evidence" of inevitable intimidation in *Harvey's Wagon Wheel, Inc. v. NLRB,* 550 F.2d 1139, 1142 (CA9, 1976). The statutory scheme requires proof of adjudicative, not legislative, facts.

**29.** It might be argued that the mere delay that this FOIA suit creates to the Board process of enforcing the provisions of the NLRA constitutes exemption 7(A) interference. *New England Medical Center Hosp. v. NLRB,* 548 F.2d 377, 384 (CA1, 1976). But giving such scope to this exemption would result in a per se rule that any FOIA suit designed to obtain investigatory files would fail if it coincided with a scheduled hearing. For the reasons we have

indicated, we think this result inconsistent with the intent of the statute as amended.

**30.** 29 C.F.R. § 102.118(b)(1) (1976). This rule, which is modeled after the Jencks Act, 18 U.S.C. § 3500, applies as well to representation cases. 29 C.F.R. § 102.118(c) (1976).

**31.** We draw these explanations of what may create confidentiality from language in the conference report on the 1974 amendments to the FOIA:

"The substitution of the term 'confidential source' in section 552(b)(7)(D) is to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. Under this category,

*Inc. v. NLRB*, 336 F.2d 128, 134 (CA5, 1964) (importance of preserving confidentiality of employee statements). However, as the district court held, the Board's case under exemption 7(D) fails for the same reason that exemption 7(C) fails: all the statements sought here come from those who are scheduled to testify at trial anyway. If one's identity is certain to be disclosed, we cannot characterize him as one of the sources given either express or implied assurance of confidentiality.[32]

### Exemption 5

Finally, the Board asserts that the statements and affidavits taken from prospective witnesses are protected from disclosure by exemption 5, which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). In contrast with its position on exemption 7(A), the Board has not met with much success with this argument. *See Title Guarantee*, 534 F.2d at 492–93 n. 15 (dictum); *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1138 (CA4, 1977); *Marathon LeTourneau Co. v. NLRB*, 414 F.Supp. 1074, 1080 (S.D.Miss., 1976).

Exemption 5, which unlike exemption 7 remained unchanged by the 1974 amendments, has been held to encompass the work-product privilege of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29, 49 (1975); *Kent Corp. v. NLRB*, 530

F.2d 612, 618 (CA5), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). The basic disagreement between the Board and Robbins Tire here is whether the distinction between "factual" and "deliberative" materials fashioned in *EPA v. Mink*, 410 U.S. 73, 87–88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119, 132 (1973), in connection with executive privilege was intended to be or can be extended to cases involving the work-product privilege. If in fact Congress meant to incorporate *Hickman* in all its complexity into exemption 5 as a sort of direct legal transplant, the witness statements in this case would be exempt from disclosure, for *Hickman* protected even relevant and non-privileged witness statements unless production "is essential to the preparation of one's case." 329 U.S. at 511, 67 S.Ct. at 394, 91 L.Ed.2d at 462. Since as we have noted FOIA prohibits looking at the needs of the particular plaintiff in ruling on the applicability of the exemptions, such statements would not "normally" or "routinely" be disclosed in private litigation. *Sears*, 421 U.S. at 149 & n. 16, 95 S.Ct. at 1515 & n. 16, 44 L.Ed.2d at 46 & n. 16, *citing* H.R.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966). On the other hand, if *Hickman* as applied to exemption 5 does not protect factual materials, these statements would have to be disclosed. They constitute purely factual testimony regarding events at the plant.

We think that the *Hickman* privilege as read into exemption 5, like the executive privilege, must be applied consistently with Congress' intent to protect only

---

in every case where the investigatory records sought were compiled for law enforcement purposes—either civil or criminal in nature—the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source who furnished the information."
Source Book 230 (Conf.Rep.No. 93–138, 93d Cong., 2d Sess. (1974)).
Of course, here the Board has offered no specific evidence concerning the Robbins Tire situation from which a court might draw such a reasonable inference. *See Title Guarantee*, 534 F.2d at 489–90 n. 11 (dictum). Its exemption 7(D) position, like its positions regarding the exemptions already discussed, is a per se

one. But the question here, too, is ordinarily one of fact. *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1137 (CA4, 1977).

**32.** Cf. *Climax Molybdenum Co. v. NLRB*, 407 F.Supp. 208, 209 (D.Colo., 1975), *aff'd on other grounds*, 539 F.2d 63 (CA10, 1976); *accord, Mylan Pharmaceuticals, Inc. v. NLRB*, 407 F.Supp. 1124, 1127 (W.D.Pa., 1976). These cases argue that all interviewees are potential witnesses and that they therefore can never be considered confidential sources. We do not express an opinion on the applicability of exemption 7(D) with respect to statements of those not scheduled to be called at the Board hearing.

against disclosure of governmental policy-making processes.[33] The general concern surrounding exemption 5 was to guard against stifling flexibility of viewpoints before agencies arrive at final institutional decisions. As the House Report noted, the exemption was a response to testimony from agency witnesses

> that a full and frank exchange of opinions would be impossible if all internal communications were made public. They contended, and with merit, that advice from staff assistants and the exchange of ideas among agency personnel would not be completely frank if they were forced to "operate in a fishbowl."

H.R.Rep.No. 1497, 89th Cong., 2d Sess. (1966), *reprinted in* [1966] U.S.Code Cong. & Admin.News, pp. 2418, 2427.[34] Since the purpose of exemption 5 was to protect agency deliberative processes, purely factual material such as verbatim witness statements must not fall within it, whether the agency urges upon us the executive or the work-product privilege. *See Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1138 (CA4, 1977).

▮ While the *Mink* Court spoke in the more conventional exemption 5 context of an assertion of executive privilege, we do not interpret its discussion to be restricted to that context. The Court described in some detail the difficult language as well as the legislative history of exemption 5. While noting the problems involved in applying discovery analogies without inquiring as to individual need,[35] the Court observed that one thing about exemption 5 was certain: "Congress intended to incorporate generally the recognized rule that 'confidential intra-agency advisory opinions . . . are privileged from inspection.' " 410 U.S. at 86, 93 S.Ct. at 836, 35 L.Ed.2d at 132.[36] Justice White supported this position by citing the House and Senate reports to which we have referred. He then articulated the deliberative-factual distinction, and in doing so cited cases such as *Soucie v. David,* 448 F.2d 1067 (CADC, 1971). *Soucie* was not confined to the executive privilege context; there the D. C. Circuit was promulgating broad guidelines for the handling of the exemption 5 issue on remand. *See also Bristol-Myers Co. v. FTC,* 424 F.2d 935 (CADC), *cert. denied,* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970) (cited in *Mink* ). Finally, Justice White explained that the first version of exemption 5 had definitively exempted only "memorandums or letters dealing solely with matters of law and policy." [37] The only reason for the change in final wording was not to weaken this deliberative-factual distinction but to assure that factual material inextricably intertwined with deliberative material would also be exempt. *Mink,* 410 U.S. at 90–91, 93 S.Ct. at 837, 35 L.Ed.2d at 134. *Mink's* extensive analysis of exemption 5 as a whole shows that the case should properly be read as an exemption 5 case, not simply an executive privilege case. It paints with a broad brush, like other decisions both before and after it. *See, e. g., National Courier Association v. Board of Governors,* 516 F.2d 1229, 1242 (CADC, 1975); *Schwartz v. IRS,* 511 F.2d 1303, 1305 (CADC, 1975); *Tennessean Newspapers, Inc. v. FHA,* 464 F.2d 657, 660 (CA6, 1972);

---

**33.** As noted above, we must construe FOIA exemptions narrowly. *Rose,* 425 U.S. at 360–61, 96 S.Ct. at 20–21, 48 L.Ed.2d at 21. With respect to exemption 5 in particular, see S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965) ("The committee . . . has attempted to delimit the exception as narrowly as consistent with efficient Government operation.").

**34.** *See also* Davis, *The Information Act: A Preliminary Analysis,* 34 U.Chi.L.Rev. 761, 795 & n. 88 (1967); Note, *The Freedom of Information Act and the Exemption for Intra-agency Memoranda,* 86 Harv.L.Rev. 1047, 1049 & nn. 11–12 (1973).

**35.** *See* note 17, *supra.*

**36.** *Cf. Sears,* 421 U.S. at 154, 95 S.Ct. at 1518, 44 L.Ed.2d at 49: "Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy."

**37.** In fact, S.Rep.No. 1219, 88th Cong., 2d Sess. 13–14 (1964), accompanying this version noted that "there is no exemption for matters of a factual nature."

*Soucie, supra; GSA v. Benson*, 415 F.2d 878 (CA9, 1969). This court has described exemption 5 in the following way:

### The "Memorandum" Exception

. . . Whatever may be the scope of this exception, with its cryptic limiting phrase "which would not be available by law to a party other than an agency in litigation" . . . we think it would be a perversion of the Act to classify the materials sought in this case [OSHA training manuals] as within this provision which is designed to encourage the free exchange of ideas among government policy-makers. It was not defined as an exception to compelled disclosure in order to authorize an agency to throw a protective blanket over any type of information it might choose by the expedient of casting it in the form of an internal memorandum. *Bristol Myers Co. v. F.T.C.*, 424 F.2d 935 (D.C. Cir.), cert. denied, 400 U.S. 284, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). Substance not form determines is availability by the public. . . . The subject manual is an impersonal, mass-produced statement of established policy designed to be utilized as an educational and reference tool, not for policy-making or deliberative purposes. If this material be a "memorandum" then the term would cover virtually all government documents of any description or nature. Such an interpretation would be at war not only with the plain meaning of the word but also with the spirit and purpose of the Act. Whatever the ultimate scope of this "memorandum" exception may be, we are confident that these materials would remain without its reach.

*Stokes v. Brennan*, 476 F.2d 699, 703–04 (CA5, 1973). There is no suggestion here that the factual-deliberative distinction only defines the scope of the executive privilege. It is inherent in the purpose of exemption 5.

Indeed, we suggested the answer to this case in *Kent Corp. v. NLRB*, 530 F.2d 612, 623–24 (CA5), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976), in which we held protected under exemption 5 "final investigation reports" prepared by NLRB

staff members. These reports summarized the evidence of unfair labor practices (gained by witness interviews such as those actually requested here) and recommended dispositions as to the various charges. Discussing the work-product privilege and *Hickman*, we held that even the factual information contained in these reports was protected. But our approach emphasized the deliberative nature of the report process into which these facts were integrated and contrasted these documents with the precise sort of "primary information" that is involved in this case:

In our view, even the factual matters in these reports (which might not be protected by executive privilege) are protected by the work-product privilege. Writing in contemplation of forthcoming unfair labor practice litigation, an attorney must be able not only to discuss doctrinal theories but also to "assemble information, [and] sift what he considers to be the relevant from the irrelevant facts" without feeling that he is working for his adversary at the same time. *Hickman v. Taylor*, 329 U.S. at 511, 67 S.Ct. at 393, 91 L.Ed. at 462. The feeling would be well justified if we allowed the FOIA to be used to force disclosure of such materials.

This case is a particularly strong one for recognizing the privilege. *The contents of the reports are not primary information, such as verbatim witness testimony or objective data*, but rather are mainly reports on how the Birmingham attorneys appraised the evidence they found. Thus the reports consist largely of "mental impressions, conclusions, opinions, [and] legal theories" within the meaning of the Federal Rule. Such materials, if prepared in anticipation of litigation or for trial, are always protected by a properly-raised claim of work product privilege, regardless of the opposing litigant's need.

530 F.2d at 624 (emphasis added).

*Mink, Stokes,* and *Kent* all admit the difficulties involved in administering a statutory standard that ordinarily turns on individual need but prohibits courts from as-

sessing such factors in the FOIA context. *See* note 17, *supra.* Whether as in *Stokes* we resolve the problem by focusing on the word "memorandum" and concluding that factual witness statements are not encompassed within that term,[38] or whether we conclude that in constructing its exemption 5 discovery analogy Congress had no inkling of the ramifications of the qualified part of the *Hickman* privilege,[39] we cannot reconcile withholding these statements with exemption 5's narrow policy of safeguarding the thought processes of the agency as an institutional thinker.

The Board has failed to sustain its statutory burden of proof as to exemptions 7(A), 7(C), 7(D), and 5. The district court's order compelling disclosure is affirmed.

AFFIRMED.

**38.** *See also Title Guarantee Co. v. NLRB*, 407 F.Supp. 498, 502 (SDNY), *rev'd on other grounds*, 534 F.2d 484 (CA2), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).

**39.** For a fuller description of these two approaches, *see* Note, *supra*, note 34, at 1049–51.